# THE CLARA.

# THE RELIANCE.

## McCAFFREY *et al. v.* THE CLARA AND THE RELIANCE.

*(District Court, S. D. New York. February 14, 1892.)*

**1. COLLISION—EAST RIVER—CORLEAR'S HOOK—STATUTE AS TO MID-RIVER—HUGGING SHORE—SIGNALS OMITTED.**

The tug C., with a tow, was going up the East river with the strong flood-tide, within 400 feet of the New York shore, and was nearing Corlear's Hook. The steam-barge R., coming down stream nearer the New York shore, on passing from the slack-water into the strong flood-tide off the Hook, setting a little across the river, swung her head to port, and collided with the tow of the C., though both vessels reversed. *Held,* that the C. was in fault (1) for disobeying the statute which required her to take the middle of the river; also (2) for not signaling; and (3) for not giving more room for the swing of the R. in the cross-tide. The R.,

coming down on her own side of the river in slack-water, and not expecting to meet any vessel coming up in the C.'s situation, was held in fault for not keeping a proper lookout, and consequently not doing all she might have done to counteract the tide.

2. SAME—STATUTES—WHEN MATERIAL—CUMULATIVE—PRECAUTIONS AGAINST COLLISIONS.

The non-observance of the statute requiring vessels to navigate in the middle of the East river is material when it causes embarrassment to the other vessel. To prevent collisions, the rules impose cumulative duties, designed in part to avert the consequences of mistake or negligence. Hence the non-observance of a rule, such as to give signals, does not become immaterial, merely because observance of the rule would not have been necessary if the other vessel had done her duty, or had not been negligent.

In Admiralty. Libel by owner of canal-boat George Adams to recover damages for collision.

*Carpenter & Mosher*, for libelants.

*Goodrich, Deady & Goodrich*, for the Clara.

*Wing, Shoudy & Putnam*, for the Reliance.

BROWN, District Judge. At about 8:30 A.M. on October 20, 1891, as the steam-tug Clara, with the canal-boat George Adams lashed to her port side, was proceeding up the East river in the strength of the flood-tide, the canal-boat, when off Corlear's Hook, came in collision with the steam-barge Reliance, loaded with coal, which was coming down the river and rounding Corlear's Hook near the shore. The Reliance was loaded deeply by the head, and on passing from the slack-water near the shore into the strong flood-tide, which sets from Jackson-Street pier towards Williamsburgh, she was swung round to port; and though both reversed full speed, they could not avoid collision.

This collision, like so many others that occur at Corlear's Hook, is directly traceable to the persistent refusal of those navigating round the Hook to observe the statutory requirement to go as "near mid-river as may be." For the purpose of taking advantage of the slacker water at one place or another above or below the Hook, tugs continually take the additional risks that a violation of the statute involves. In the present case, so far as I can see, the Clara was without excuse. Although the evidence is contradictory as to her precise position in the river, I am satisfied that she was not over 400 feet from the New York shore, if so much, or one-quarter of the width of the river there. A number of witnesses testify she was only half that distance out. Of the disinterested witnesses, those who were in the best position to observe make the distance from the New York shore the smallest. The only excuse offered by the Clara for not keeping the middle or right-hand side of the river is the set of the tide towards the Williamsburgh shore. But that suggestion is without force; there was nothing in the tide that presented the slightest difficulty in going in mid-river, or on the right-hand side of the river, had the Clara been so inclined. The river was clear of other vessels. The Clara was further in fault for not signaling as required by the rules of the supervising inspectors. No signals were given

by either tug. The excuse given by the Clara for not signaling is that she was so much further out in the river than the Reliance that there was no need of signals; but the result proves the contrary. It is further urged that both her place in the river and the absence of a signal were immaterial, because there was time enough and space enough for the vessels to avoid each other as they were going, and without the giving of signals. If this argument were sound, no signal would ever be material, since there is always time enough and space enough if each boat does her duty otherwise, except in cases of inevitable accident. The same reasoning would make the want of a proper lookout on the Reliance immaterial, since the absence of a lookout would have done no harm had the Clara been near mid-river, where the statute required her to be. The argument wholly overlooks the object of the various rules for the avoidance of collisions, which is to provide cumulative guaranties for the preservation of life and property, rather then to allow the safety of all to be imperiled upon the chance of a single neglect. To prevent lamentable accidents, often involving the loss of life, these cumulative duties are imposed by the rules and regulations upon both vessels. Timely signals are required, because such signals tend to avert the natural consequences of carelessness, and the lack of previous timely observation on one side or the other, as well as to enable the boats to come to a common understanding as to the mode of passing. Navigation in mid-river is required in order to give larger opportunities for maneuvering, and to avoid the special dangers arising near the shore, and any interference with other vessels there.

Next to Hell Gate, Corlear's Hook and the Battery present the greatest dangers in East river navigation, and the observance of all the rules to avoid collision is in those places most imperative. I think it probable, as is urged by the counsel for the Clara, that if a good lookout had been kept on the Reliance, and if her wheel had been put hard a-port at the moment when it was put slightly to starboard, and thus no delay in porting had happened, the collision might possibly have been avoided, although this is not positively certain. But the Reliance did not keep a proper lookout. She was pursuing the usual course, coming down on the right-hand side of the river in slack-water, and apparently did not expect to meet a vessel coming up in the Clara's position. She was inattentive and negligent, and is, therefore, chargeable with her own fault, and is liable therefor. But that does not remove the fault of the Clara in coming up the river in the strength of the flood-tide near the New York shore without good reason, and where her course was a serious threat and embarrassment to the Reliance, coming down on her own side of the river near the New York shore in the customary manner; because it would require, I think, the utmost care and effort by the Reliance, from the time the Clara's position and course became first visible, to avoid on the one hand the long Jackson-Street wharf, and to avoid on the other hand being set across against the Clara by the strong cross-current the moment the Reliance struck it.

The rule constantly applied is that, if the navigation of the one vessel contrary to the statute produces difficulty and embarrassment to the other vessel, the violation of the statute shall be held to be a contributing fault, since one of the objects of the statute is to prevent such embarrassments, (*The Columbia*, 29 Fed. Rep. 716, 719; *The Rockaway*, 38 Fed. Rep. 856, affirmed 43 Fed. Rep. 544; *The Garden City*, 38 Fed. Rep. 860, and cases there cited;) but if it causes no embarrassment, it is not deemed a proximate cause of the collision, and will be disregarded, (*The Columbia*, *supra*; *The Titan*, 44 Fed. Rep. 510, affirmed 1 U. S. App. 123, 49 Fed. Rep. 479; *The Emperor*, 46 Fed. Rep. 143.) So also, had a signal been given by the Clara as required by the inspector's rules, there is no reason to suppose the attention of the Reliance would not have been attracted by it. The Clara has not shown, and cannot show, that such a signal would have been of no use. *The Pennsylvania*, 19 Wall. 125, 136; *The Dentz*, 29 Fed. Rep. 528. If the presence of the Clara had been thus made known, earlier efforts would naturally have been made by the Reliance to withstand the strong set of the tide which swung her against the Clara's tow. The lack of a signal thus presumptively contributed directly to the collision.

When the Reliance was seen by the Clara at some distance, it was, moreover, the Clara's duty to go to the right a sufficient distance to allow for any swing of the Reliance that the tide might cause without her fault. *The Fred Jansen*, 49 Fed. Rep. 254, 1 U. S. App. 92. There was nothing to prevent the Clara from doing so.

The evidence does not warrant the finding that the Reliance was in fault for being loaded by the head, nor because the tide got the best of her for a few moments. Nor was such a swing to be wholly unexpected; it happens occasionally, and the Clara took the risk of it in going so near the shore. I have no doubt the Reliance took the ordinary precautions, and, after the Clara was seen, did as well as she could. Her fault was in not seeing the Clara sooner; but for this the Clara was also partly responsible, because she did not give the signal which the law required of her. The fault of the Reliance being obvious from want of a proper lookout, the damages must be divided, and a reference ordered to compute the amount, if not agreed upon.