LATHAM et al. v. HAMILTON & MERRIMAN\ CO.

(Circuit Court of Appeals, Seventh Circuit. October 11, 1894.)

No. 134.

COLLISION BETWEEN STEAM AND SAIL—TUGS—NEGLIGENCE.

Two tugs started at the same time to go to a schooner in order to tow her into the harbor. Both tugs approached the schooner at full speed, and, in attempting to turn so as to catch the towline, one of the tugs forced the other so near the schooner that it collided with the schooner. *Held*, that both tugs were guilty of negligence, and were responsible for the injury. 50 Fed. 583, reversed

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Libel by the Hamilton & Merriman Company against John Latham and Thomas H. Smith for damages for a collision. Libelant obtained a decree. 50 Fed. 583. Respondents appeal.

Max C. Krause, for appellants.

F. M. Hoyt, for appellee.

Before WOODS, Circuit Judge, and BUNN, District Judge.

BUNN, District Judge. This is a case involving the question of responsibility for a collision which took place between the steam tug Jesse Spaulding and the schooner Butcher Boy, occurring near Sturgeon Bay canal, on Lake Michigan, on September 29, 1889. The contest is between the steam tugs Jesse Spaulding and George Nelson. The facts proven or mainly undisputed are these: On that day these two steam tugs, the Jesse Spaulding and George Nelson, were lying moored at the same dock in Sturgeon Bay canal, on the north side thereof, and about one-half mile from the mouth of the canal where it enters Lake Michigan, the Nelson lying just beyond the Spaulding, a few feet further from the mouth of the canal. These tugs were both engaged in the same business, and were of about equal size and speed. Some of the witnesses testify that the George Nelson was a little faster boat, Charles A. Graves, the master, testifying that his boat could run from one-fourth to one-half of a mile per hour faster than the Spaulding. But the weight of evidence shows that the tugs were of substantially the same speed, which was about 13 miles per hour each. Early on that morning, between 5 and 6 o'clock, the officers of the tugs, both having steam up, sighted at about the same moment the schooner Butcher Boy, coming down the lake from a southeasterly direction, loaded with lumber, and evidently with the purpose of coming into the canal. Thereupon both tugs let loose at the same time, and started out of the canal and up the lake towards the schooner, to get the tow of the schooner, to take her into the canal. There was a dead sea, hardly any wind blowing, and the schooner, being a sailing vessel, was moving in a north-northwesterly direction at a very slow rate, not to exceed one mile or a mile and a half an hour. The Spaulding, lying ahead

of the Nelson, led out down the canal towards the lake, the Nelson following immediately behind; but the Nelson, from having more steam up, or for some reason, gained on the Spaulding, and overtook and came alongside of the Spaulding, on her starboard side, at the mouth of the canal, or a little after the tugs entered the lake; and from that time until they came to a point opposite the stern of the schooner, on her port side, and about a mile and a half or two miles southeasterly from the mouth of the canal, the two tugs kept substantially abreast of each other. Some of the witnesses for the Nelson testify that the Nelson forged a part of a length ahead of the Spaulding, and kept that position until the turn was made, and that the Spaulding was enabled to keep its position and maintain the contest of speed by keeping in the suction of the Nelson, which the Nelson was unable to avoid, because running so near to rocks on its starboard or shore side; and the captain of the Spaulding admits that his boat may may have been in the suction of the Nelson. But, if the Nelson were ahead at all up to the time they undertook to make the turn to come alongside the schooner, it was not more than about one-half length. The tugs thus deliberately entered into a contest, each running wide open and at full speed, in order to obtain the tow first. The witnesses all agree that this was the purpose of each, and that they were both running at full speed, or about 13 miles per hour. Nor did either tug slacken its speed when coming into the near vicinity of the schooner, and when they undertook at the same instant to execute a movement which should change their course from a southeasterly to a north-northwesterly course, to come alongside the schooner on her port side, where her tow-line was out, ready for the tug that should first reach it. When the tugs arrived at a point somewhere from 400 to 1,000 feet from the schooner, and about opposite or a little beyond her stern, they simultaneously turned their wheels a-starboard, in order to turn about and come alongside the schooner on the rear or port side, to obtain the tow. In endeavoring to execute this movement, the Nelson, having the outward sweep, fell part of a length behind the Spaulding, and, both moving still at full speed, the Spaulding headed in an easterly direction, directly towards the schooner, and ran into her amidships, and very nearly at right angles, plowing through about four feet of her timbers, and making a serious breach in the vessel. The Nelson, being still on the starboard side of the Spaulding, reversed her engine in time to avoid a collision with the schooner; but the Spaulding, although she reversed her engine, did not succeed in avoiding a collision. The Spaulding took the tow, and hauled the vessel into the canal before she had time to fill with water enough to cause her to sink.

So far the facts are fully and fairly established by the evidence. The principal conflict relates to the question of the controlling cause of the collision between the tug Spaulding and the schooner, the Spaulding contending that it was caused by the Nelson running into the Spaulding on her starboard side, a little back of amid-

FEDERAL REPORTER, vol. 63.

ships, after the turn was partially made, and throwing the bow of the Spaulding to the eastward, and thus changing the course of that tug, and that, but for this action of the Nelson, the Spaulding would have cleared the schooner, and avoided the collision. The district court took this view, holding that the Spaulding was the leading vessel; that it was the business of the Nelson, which was the following vessel, to keep out of the way, and that the Nelson was alone responsible for the collision. The contention of the Nelson is that the Spaulding either could not, considering its speed and close proximity to the schooner, execute a turn without a collision, or that it was so determined upon getting the tow that it took the risk involved in crowding the Nelson out, and preventing her from coming between itself and the schooner. The evidence in support of these two contentions is conflicting, and it is difficult to say in which way is the preponderance. But we are of the opinion that, in any view of the case which may be taken, both tugs were guilty of a want of proper care and caution in the premises. We do not think the case should be decided upon the principle that it was the duty of the Nelson to keep out of the way of the Spaulding, as the leading boat, without regard to other rules of navigation. One purpose of all these rules is to prevent accidents involving property and life. Here was a collision imminently dangerous to life, as well as property. It was the duty of each boat, in the presence of such danger, to do all in its power to avoid a collision. Neither tug did this. On the contrary, they deliberately entered into a contest which, as conducted, was necessarily hazardous, and, for the small prize involved, were willing to imperil the safety of the property and crew of the schooner, and, as the event showed, sacrificed the one to the other. The damage being done by the Spaulding, the presumption is strong that that tug was responsible, in whole or in part, for the result, unless the contrary is clearly shown by the weight of evidence, which we cannot say is the case. Nor is the court able to say, from the evidence, that the Spaulding is to be considered the "leading boat," within the meaning of the rule which requires in such case that the following boat must keep out of the way. They started from the canal at the same time, and, from the time they entered the lake until they began to make the turn, the Spaulding was not actually in the lead; and whatever advantage it had, if any, was because its course was inside that of the Nelson, or nearer the schooner. But out of this fact, on the contrary, the owners of the Nelson invoke the rule that, at the time of making the turn, the Spaulding, having the Nelson on the starboard side, was required to keep out of the way. See Rule 19, § 4233, Rev. St.

We are of opinion that the case should not be decided upon a consideration of either or both of these rules alone, without regard to another rule quite as important and controlling,—that, in the presence of danger, it is the duty of any boat to do all in its power to prevent serious accident to property and life. We cannot say from the evidence that the Spaulding was wholly free from the-

charge of negligence in undertaking to reverse its course in such near proximity to the schooner while sailing at such a high rate of speed. No doubt, by reversing the engine sooner, and slacking the speed, the Spaulding could have cleared the schooner; but then, in doing so, there was danger of losing the tow by allowing the Nelson to come between the Spaulding and the schooner; and we are convinced that both tugs voluntarily, not to say recklessly, took chances of accident in order to succeed in the contest. Supposing it to be lawful to enter into such a contest at all, for the sake of so paltry a stake, each had an equal right to enter into it; and it must be evident that it was culpable in either to sacrifice anything of safety for property and crew to success in the struggle. We will make a brief reference to the testimony upon either side of the contention as to what was the controlling cause of the collision.

The libelant's view is fairly presented by the testimony of William Marshall, the captain of the Spaulding. He says his tug was aft the schooner 4 to 6 lengths away when he began to make the turn. As the tug was about 71 feet long, this would make the distance from the schooner about 355 feet. That the Nelson was right on his starboard side when he put his wheel hard a starboard, to come around. That, after doing this, he was headed to clear the schooner, when he saw the Nelson coming in towards them, headed for his after quarter, which she ran into, and swung the stern of the Spaulding to port and the bow around to starboard, so that the Spaulding ran into the schooner. That, the moment the Nelson ran into him, he gave the signal to reverse the engine and back. He further explains in regard to the coming together of the tugs that "as they dropped together, the Nelson struck the Spaulding in the quarter aft, swung right together, more of a jar. That, of course, the Nelson did not run head on, but got in the suction of the Spaulding, and that the suction drew them together." That the Spaulding then became unmanageable; would not mind her rudder; could not do anything with her after the Nelson struck her, but that she rolled down in the water, so that the water ran over the deck. That his boat was not damaged any. Peter Bachellor, a cook on the Spaulding, says that he was in the pilot house of his boat; that the tugs started at the same time; that the Nelson gained on the Spaulding right along, and he thinks came alongside when about 100 feet in the canal; that both tugs headed south after getting into the lake, the Nelson a little in advance, about half a length, keeping that position until they began to make the turn, he thinks about a quarter of a mile from the schooner; that, after they had headed to the east, the Spaulding was in the advance in making the circle, about one-half a length or more, and about 100 feet away; that the Spaulding at this time was in shape to clear the schooner if the Nelson had not struck her. Louis M. Peterson thinks the tugs were about 300 feet from the schooner when they began to make the turn, or between 300 and 400; that, when the Nelson came into them, the Spaulding was

heading about onto the schooner, about east, and that the effect of the tugs meeting was to prevent the Spaulding from swinging so as to clear the schooner. E. L. Blakefield testifies that the tugs were 250 or 300 feet from the vessel when they began to make the turn; that they turned about the same time, the Spaulding first, but that the Nelson turned quicker than the Spaulding; that, at the time the Nelson struck the Spaulding, the latter was heading about towards the forward quarter of the schooner, about northeast, and, when the Nelson hit the Spaulding, she was heading a little north or northeast; and that they would have both made the turn if the Nelson had made the same movement as the Spaulding. Charles A. Graves, captain of the Nelson, says he came up with the Spaulding at the end of the piers, and went by him; that he was possibly 1,000 feet away from the schooner when they began to turn; that the Spaulding was then astern of the Nelson, on his quarter; that the Nelson was then the leading boat; that the Spaulding had the Nelson on her starboard, and that the Nelson was the leading boat, and it was the duty of the Spaulding to keep out of his way; that, when he starboarded his wheel, he was ahead, and did not know whether the Spaulding had starboarded his, but thinks he had, as they came around together; that the Spaulding, having the shorter turn, gained a little, when the boats got too close, and lapped in together; that, when they lapped together, his stern was a little forward of the Spaulding's fire-hole door, and that the boats sucked in together alongside; that the Spaulding listed over a little; that, when the boats were 10 or 15 feet apart, the suction caught them, and pulled them together; that he thereupon rang two bells, to back up, and stopped his boat before they got to the schooner; that there was nothing to prevent the Spaulding backing and reversing at the time he did, and, if the captain had given that order at that time, he would have stopped his boat; says that, in his judgment, the man got rattled and lost his head; that from his actions he should judge that his wheel was a-port; that, if he had backed and stopped, he would not have struck the schooner, or, if he had kept his wheel hard a-starboard, he might have cleared the schooner. James Curry was engineer on the Nelson, and says they were half a length ahead of the Spaulding when they turned; that the Spaulding's pilot house was just even with his engine door, which was a little aft of midships; that the stem of his boat did not strike the Spaulding at any time, or come anywhere near it, but that the boats came together with a jam, rather than a blow, and that no damage was done to either; that the lapping together would not have any material effect on the course of the two tugs if they had kept their wheels in the same position; says he should say it was the suction that drew the boats together; that he does not think the lapping of the two boats caused the collision, but that it might have been prevented by the Spaulding's stopping; that she might have stopped and backed up a little sooner; that the Spaulding was very easily listed over; and that she listed over and

listed back some, but not clear back, until after she struck the schooner. Other witnesses for the Nelson testify that the collision might have been prevented by the Spaulding reversing and backing sooner, but that she kept her course in order to cut the Nelson off from getting the tow.

Perhaps the captain and mate on the Butcher Boy, who should be disinterested witnesses, were in as good a position, being in the pilot house of the schooner, to observe the movements of the two tugs as any other witnesses. Samuel Parker, the captain, says the tugs both came out of the canal together, and they seemed to be about the same when they got up abreast of him. That he thinks they were 10 or 12 lengths west of the vessel, inshore; that there was not any wind. That when they got abreast of the schooner, or a little further south than abreast, they started to turn to the east, to come to the vessel. That, just as soon as they started to him, he said to the mate: "My God, they can't make that turn in that distance. They are going to run into the vessel," —and that he sang out: "Back the tugs. You are going to run into the vessel." He says: "I sang out from the time they made the turn until they struck the vessel. I imagined they could not make the turn at the rate they were going." That his opinion still was that they could not make the turn in the distance she was from the vessel, and come up alongside of the vessel, at the speed she was going. Says that he is positive that neither of the tugs was headed at any time to the northward or northeast, so as to pass the bow of the schooner, after they started to make the turn. That he begged probably 20 times, from the time the turn was made until the boat ran into him, "For God's sake, to back." That he was looking the man in the face, and seeing what was coming. That he heard no signal to back in either boat, and only knew that the Nelson gave any from her action. That she did not touch the vessel, but just dropped across the stern. That, if the Spaulding had given orders to her engineer to stop and reverse at the time he hallooed to him to back, he thinks she would not have collided with the schooner. That the Spaulding struck his vessel end on, probably a very small fraction of an angle, leading a little towards the bow of the vessel, by the stem iron, by the impression on the vessel's side, and would have sunk her in about half an hour if she had not been as close as she was to the canal. That they got a bag of oakum, and put in the break to keep the water out. He says:

"The tug struck me with her stem about square. I will call it square, but I say it angles probably a very little, right amidships, three feet forward of the main mast, and broke through the first and second plank under the water. When the upper part of the stem came in collision with the upper part of the vessel, she walked through four feet of plank, solid oak in regard to building a vessel. There she stopped. The Nelson was then twenty or thirty feet away, just going across the vessel's stern."

The following questions, with the witness' answers, further illustrate his views of the situation:

"Q. It is claimed by the tug Spaulding that the collision between the Spaulding and the Butcher Boy was caused by the Nelson striking the Spaul-

·ding on the starboard quarter, and forcing her bow around to the eastward. State whether this is true or not. A. I do not think it. I may have looked at it different to this man. I thought he had not got room to make that circuit, and I think so yet. Q. The Spaulding? A. Yes, sir. Q. At the time he started to make the turn? A. Directly he started to make that turn, I started to sing out for him to stop; he could not make it. Q. Independent of the movements of the Nelson? A. I don't think I ever looked at the Nelson. I was watching the man that I thought was going ·to run into me. Q. And you made up your mind that he was going to· run into you as soon as he started to make the turn? A. As soon as he did, I guess they all know I sung out to him to back their boat; they couldn't make it; and it looked to me by the collision that they hadn't distance to make that turn at the rate they were coming. I looked at it that way then, and I look at it so now. If he had backed his boat, the same as the Nelson, wè would have had no collision. That is all about it, no matter how close· the turn had been. One man backed, and he got clear of the vessel, and the other man, if he ·backed— I don't say that he didn't. It is not for me to dispute. He says he backed. I did not hear either of them; only by the action of the boat I could see that the other man didn't hit me. Q. You were watching the Spaulding. Did you see anything, while watching her, of the movements of the Nelson that interfered with movements of the Spaulding? A. I don't know anything about that. I could not tell anything about that. Q. Now, if the Spaulding had backed when you hallooed, and when she started to make the turn, would she have got the tow? A. If she had backed? Q. Yes. A. No; she would not have got the tow. She would have lost the tow. That is all about it. They knew that. That is why they were going ahead, but, if the other boat had backed, why then the Nelson would have got the tow. Q. If the Spaulding had backed? A. Yes; certainly she would. If the Nelson had backed, the Spaulding would have got the tow; if he had backed in the first place. But the Nelson did not back until she was alongside,—until he see that trouble was coming close. When these boats first started to turn, if either one had backed· they would have been in the lurch. That is all there is about it. But when they see there was a collision imminent—' I don't know, I did not hear the man's bells, but he kept clear. Q. The Nelson? A. Looks like it. I did not hear the bells to back. I didn't pay any attention to him, nor the boats either, any more than getting my tow in, until I see them going to make that turn so close to the vessel; and I said to my mate before it occurred, "My God, them boys can't make the turn." And I started to sing out to them to back. They could not make the turn; nor they didn't make the turn. Whose fault it was, that I don't know anything about. I am not supposed to know."

Thomas Wilson, mate on the schooner, testifies that the Spaulding did not head towards the northwest, but came straight for the schooner from the first, and struck her right straight, stem on, and no glancing at· all; that he supposes what caused the collision was that they were both racing to get the tow, to get the line first; that Captain Parker hallooed, and made motions with his hands, to the captain of the Spaulding to back up, but he heard no bells on the Spaulding, but heard two on the Nelson after she was fast in the Spaulding; that he saw ·the Nelson strike the Spaulding; that at that time the Spaulding was heading directly east, 40 or 50 feet from the schooner; thinks the Nelson struck the Spaulding somewhere around the foremast, a little forward of midships, and that the Spaulding listed over a little, but did not alter her course; that she was in the same position when she ̔struck the vessel as when she commenced to turn; that, if the Spaulding had given the signal to back at the time the Nelson did, she would not have struck the schooner; that the position of the Nelson did not at any time interfere with the movements of the Spaulding,

and there was nothing to prevent the Spaulding backing, the same as the Nelson did, but that, if she had done that, the other boat would have got inside of her, come alongside, and got the tow; that the Spaulding had time enough to have made the turn if she had tried, but, after she had first turned towards the vessel, she did not turn any more, but made right for the vessel, about east; that she could have made the turn, but that the other tug would then have been inside of her; that the Spaulding kept going and cutting the other boat off, crowding her away, so she could not get up alongside, all the time until it was too late; that they expected the collision the way they saw it,—they saw it coming; that he knew the Nelson did not hit the Spaulding aft the beam, but forward of amidships; that, at the time, the Spaulding was too close to the vessel, and had no chance to turn. She was too close to the vessel. At the speed she was going, she could not turn. Asked what caused the collision, the witness says:

"Well, he was trying to get a tow, to get alongside of the vessel first, and get a line. That is about all I can say about that. He tried to crowd the other boat out and get there. If he had stopped and backed up, or turned his boat in proper shape, everything would have been all right. We would have had no collision. The Spaulding was going too fast to handle the boat."

—Thinks the Spaulding was some 300 feet away when she began to make the turn and head for the vessel.

This view of Captain Parker and Mate Wilson—that the true reason for the collision is to be sought in the anxiety of both tugs to obtain the tow—is singularly corroborated by some answers made by the captain of the Spaulding on the cross-examination. The questions and answers are as follows:

"Q. Do you think it is good seamanship to go at the rate of thirteen miles an hour, approaching a vessel under sail, within five or six lengths? A. Circumstances alter cases. Q. Under the circumstances of this case? A. I think it had to be thirteen or fourteen miles an hour, or stop and let some other man take the vessel."

This answer probably reveals the true secret of the situation. If either slackened his speed, the other would get the tow.

We think, upon the whole evidence, that each tug was in fault in bringing about this accident; that they should share the loss equally, and congratulate themselves that the damage was not more serious than it was. If it had been further out at sea, the accident might have resulted in the loss of life, as well as the cargo of the vessel injured. It is happily not for the court to apportion the blame or degree of negligence between the parties. That might be a difficult thing to do. But the court is pretty clear in the opinion that the negligence and fault of each contributed and conspired to cause the damage. We cannot but think that the fact of entering into such a determined and spirited contest for so slight a prize, and maintaining it in the face of danger, at so high a rate of speed, and in such proximity to a sailing vessel, lying in a calm sea, powerless to help herself or keep out of danger, and undertaking to execute the movement of turning around and

coming alongside of the vessel, both undertaking to execute the some movement, with purpose to crowd the other out, without slackening speed, or taking any other precaution to prevent accident, is evidence of recklessness and want of caution on the part of both. The officers of the Spaulding, when they began making the turn, knew what the position of the Nelson was, and that she was in fact, whether she had a right to do so or not, endeavoring to execute the same movement, and to come between the schooner and her, and that in so doing there would be liability of collision; and, as good and experienced sailors, if there was danger of losing control of a tug on account of suction, produced by the tugs coming near to each other, probably the liability to such danger should also have been contemplated and foreseen. It seems quite evident that each tug was more intent upon getting the advantage of the other in obtaining the tow than of providing against danger from accident; and we do not think that it is competent for either to shield itself under a technical rule, and at the same time disregard other rules and principles equally important, intended for the safety of navigation. There is this, for instance, contained in the Revised Statutes, which seems quite as applicable to this case as any that has been invoked by either as a shield, and that is:

"Every steam vessel, on approaching another vessel so as to involve risk of collision, shall slacken her speed, or, if necessary, stop and reverse. And every vessel shall, when in a fog, go at a moderate speed." Rule 21, § 4233, Rev. St.

If this rule had been duly observed by both tugs, there would have been no collision in this case.

As was said by Judge Brown, in the case of The Amos C. Barstow, 50 Fed. 623:

"The fatal result in this case only emphasizes once more the necessity of observing, not merely one rule, but all the accumulation of rules designed for the avoidance of collisions."

See, also, The Clara, 49 Fed. 767; The Aurania, 29 Fed. 98.

The decree should be reversed, and the case remanded to the district court, with directions to enter a decree in accordance with this opinion.