## COLVIN v. KOKUSAI KISEN KABUSHIKI KAISHA.
### No. 7254.

Circuit Court of Appeals, Fifth Circuit.
June 29, 1934.

See, also, 44 F.(2d) 659.

Brantly Harris, of Galveston, Tex., for appellants.

H. C. Hughes, of Galveston, Tex., and George C. Sprague, of New York City, for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Determining under section 933, title 33 USCA, that "some person other than the employer was liable in damages," Julia Colvin, individually and as next friend of her minor child, and also as administratrix of the estate of Eddie Colvin, deceased, gave the notice required by subdivision (f) to preserve her right to compensation for deficiencies in her recovery, and brought this suit against Kokusai Kisen Kabushiki Kaisha, owner of the ship France Maru, as third party.

The respondent interposed two defenses: (1) That the compensation coverage the stevedore loading the ship took out inured to its benefit so that within the meaning of the act it was Colvin's employer, and could not therefore be "some other person." (2) That, if it was a third party, the evidence failed to show it liable. The District Judge agreed with respondent on its second point, that the ship was not shown to be at fault. Without deciding the first point, he dismissed the libel, Here appellee, insisting that both of its defenses are good, argues them both vigorously.

We think it hardly debatable that the respondent was "some person other than the employer." The fact that the premium cost of the compensation coverage was included in the bill of costs the owner paid the stevedore is of no significance. What is significant is the answer to these questions: Did respondent employ Colvin, or was he employed by the stevedore? Did the stevedore in employing him act as an independent contractor, or as the servant or agent of the respondent? The evidence we think definitely answers both of these questions against appellee. It leaves no doubt that the Williamson Company, Colvin's employer, had been employed by respondent on a cost plus basis as an independent contractor, and that as such independent contractor and not as servant or agent of respondent, it had employed Colvin. Both appellant and appellee have cited and discussed

decisions under state statutes. Except as the language of the state statutes construed is substantially the same as that used in the federal act, those decisions are of little aid here, for at last it is the governing statute which controls. Looking to the words of the act in the light of its general purpose, to make the compensation provided for, the exclusive measure of recovery as between employer and employee while preserving the common-law liability of all persons at fault other than the employer, we think it would do violence to the plain common sense meaning of the words used in the act to hold that respondent was Colvin's employer, and therefore not as to him "some person other than his employer." The Aden Maru (D. C.) 51 F.(2d) 599; Samuels v. Munson S. S. Line (C. C. A.) 63 F. 861; United States v. Boyd-Campbell Co. (C. C. A.) 72 F.(2d) 40. State cases in point construing similar statutes are Standard Accident Ins. Co. v. Pa. Car Co. (C. C. A.) 49 F.(2d) 73; McGrath v. Pa. Sugar Co., 282 Pa. 265, 127 A. 780; Machae v. Fellenz Coal & Dock Co., 183 Wis. 44, 197 N. W. 198; Trumbull Cliffs Furnace Co. v. Schackovsky, 27 Ohio App. 522, 161 N. E. 238; Artificial Ice & Cold Storage Co. v. Waltz, 86 Ind. App. 534, 146 N. E. 826; Cermak v. Milwaukee Air Power Pump Co., 192 Wis. 44, 211 N. W. 354; Boyd v. Humphreys, 117 Neb. 799, 223 N. W. 658.

While we agree with libelant that respondent must stand suit as a third party, we are unable to agree with her contention that the state of the evidence is such as to require the setting aside of the District Judge's finding and decree. There was a downright and definite issue of fact which the plaintiff had the burden of maintaining, that the injury was caused by a defective rope, and specifically, as charged by her, that it broke. Most of the witnesses, including all of libelant's, were heard orally, and there are no circumstances standing out in the case giving imperative direction to a decision of it contrary to that arrived at below. In this state of the record we cannot find that the District Judge has committed plain error. We are bound to say that, however this court, or any member of it, might have decided the case as a matter of first impression, as it stands before us now we can find no warrant for rejecting as unfounded, the view the District Judge took of it. A brief summary of the evidence as it was given below will point out the difficulties under which appellant was laboring, and make clear, we think, why we may not extricate her from them.

On September 1, 1932, Eddie Colvin, while employed as a longshoreman by R. P. Williamson & Co., an independent stevedoring contractor, in assisting to load cotton on the steamship France Maru, received injuries from which he died. This is the way the accident occurred: Longshoremen employed by the stevedoring company boarded the vessel at about 1 p. m. that day to load cotton. Colvin, the deceased, was the foreman of the starboard boom gang at No. 1 hatch. Both booms were used in the work; the port boom for the after part of the hatch, and the starboard boom rigged lower for the forward part. The height of the booms was fixed by the ship's crew at the direction of the stevedores. The starboard boom, with which we are here concerned, was so rigged as to lift a sling load of cotton from the dock on the port side of the vessel, drag it up on an inclined stage to the ship's deck, and then lower it into the forward part of No. 1 hold. To secure the boom in position with only sufficient play sideways to allow it to both lift from the dock and lower into the hatch, a wire called a "guy pennant" extended from a ring in the iron collar at the end of the boom to a guy block marked "B." Through this guy block a manila rope was reeved, the ends of which were to be fastened to deck projections, chocks and bitts, to hold the boom from swinging too far to starboard when the sling load was raised to the deck. On the starboard side of this boom there was a similar guy pennant, guy block, and guy rope, and in addition a wire preventer guy extending from the collar of the boom to a ring in the deck, and thence to the bitts for fastening. This wire preventer guy was to give additional support to the boom while lifting the draft of cargo from the dock on the port side of the vessel as such lifting tended to pull the boom to port. All of this equipment was furnished by the ship, while the guy pennants and guy preventer wire were attached to the boom, the guy blocks were attached to the guy pennants, and the guy ropes were reeved through the guy blocks by the ship's crew. The stevedores themselves, however, fastened the guy ropes and the guy preventer wire so as to leave such play as they desired in the booms, and arranged it so that the guy block was about at the level of Colvin's head. The first sling load of cotton raised by the starboard boom was lifted on to the forward skid on the vessel's deck at about 1:30 p. m. and allowed to remain there a few minutes. The deceased, who was then standing close to the port hatch coaming, ordered the starboard winchman to

heave in. As the load was lifted from the skid and started over toward the hatch, the guy block swung on the guy rope and struck deceased on the head, knocking him into the hold of the vessel, causing injuries from which he died.

It was libelant's claim below, and it is pressed here, that this guy rope broke through defects in it, and that its breaking permitted the guy block to swing and strike deceased. The respondent asserted and brought testimony to show that the rope was good and did not break, but that it was either fastened with too much swing in it at first, or it came loose because not properly fastened; that the fastening of this rope was the duty of and was done by the stevedore crew, and for any defects in its tying respondent was not liable. In support of libelant's contention that the rope broke, the testimony of six or seven of Colvin's colaborers was offered. These swore, with more or less degrees of assurance, that they saw the rope break. Two of them added the detail that they saw "a Japanese just after the rope broke, throw a small broken piece down into the hold." Upon this testimony of what the longshoremen saw as to the breaking of the rope, and as to the effort of one of the ship's crew to conceal that it had broken, and particularly upon the failure of the ship to produce and offer in evidence the rope that was in use when Colvin was killed, and upon claimed discrepancies in the testimony of different ones of the ship's crew, libelant stands here maintaining that the finding against her is clearly wrong.

Opposing this claim respondent insisting that here is a clear conflict of fact, points to the depositions of the members of the crew all denying that the rope broke, all testifying to its good quality and condition, and all declaring that the rope was either too loosely tied or came loose. It points to and lays particular stress upon the testimony of Williamson, the stevedore foreman, that, hearing the claim made that the rope had broken, he went immediately to the place of the accident and thoroughly and carefully examined the equipment, and his positive testimony that the rope did not break. It calls attention to the oral testimony of Beveridge, the ship's agent, that there was no broken rope. Respondent insists that the positive quality of this testimony has peculiar significance in view of the fact that at the very time the accident occurred the members of the stevedore gang were claiming that the rope had broken, and it was to determine whether this was so that the investigation and inquiry were made with the utmost care. It argues that this is peculiarly

a case in which the findings of the District Judge on conflicting oral testimony may not be disturbed. The libelant is not so easily put down. She argues that the apparent strength of respondent's position is entirely overcome by the fact that the rope, which could have spoken so eloquently for itself if furnished, was not furnished, though respondent's attention was particularly called at the time of the accident, to the claims made about it, and though it could easily have been produced.

Respondent replies that this is not a case like those cited by libelant, in which the failure to produce physical evidence made against the one failing to produce. It argues that such failure to produce is not, it cannot be, of itself evidence of defect. It merely affords a basis for an inference of defect, when the circumstances are such that, according to human experience, it is reasonable to suppose that the failure to produce was intentional and for purposes of concealment. It argues that no such inference is drawable here, because plaintiff's injury was covered by compensation insurance, payable without reference to fault, and no claim or libel was asserted or filed against the respondent until several weeks after the ship's departure, and the claim then was the rope "broke or came loose." Carlsen v. A. Paladini (C. C. A.) 5 F.(2d) 387. They say further that, after all, whatever weight was to be given to this circumstance was for the District Judge, and that its significance to impeach his findings must be determined in the light of the whole record.

We have carefully examined the record in the light of all these contentions. We think it cannot be doubted that the failure to produce the rope was a matter for the serious consideration of the District Judge, and that it is to be considered by us in connection with all of the other evidence, in reaching our conclusion whether the decree must be reversed. Giving to this circumstance, as well as to the other evidence in the case, its proper weight in determining that question, it still remains that this is a case of conflict arising upon oral evidence taken in open court. The District Judge had the opportunity of seeing the witnesses and of judging of them and the weight of what they said by the way they said it. This opportunity we do not have. There is no doubt that the proof shows that the rope either broke, came untied, or was tied with too much slack in the beginning, but this is not enough to make a case. Libelant fully recognized this. She undertook to show affirmatively that the rope broke.

A great deal of conflicting testimony was offered on this point. Had the District Judge resolved the conflict in her favor, we would not have felt justified in disturbing his finding. He did not do so, but resolved it the other way. We cannot disturb the finding against her, unless we can say that it is without substantial support in the evidence. How can we say this unless we discredit, as interested and false, the testimony on the respondent's side, and accredit as disinterested and true that on libelant's? A case peculiarly one of fact, the District Judge has given it the direction which in his opinion the evidence required. It is not for us to say what the judgment ought originally to have been, but only whether, on the evidence as it stands, it ought not to have been entered. We think it clear that we cannot say so.

The judgment is affirmed.