### UNITED STATES v. BOYD-CAMPBELL CO., Inc.

### No. 7066.

Circuit Court of Appeals, Fifth Circuit. June 19, 1934.

See, also, 5 F. Supp. 94.

Fredk. R. Conway, Asst. Admiralty Counsel, U. S. Shipping Board M. F. Corp., and Oliver P. M. Brown, Sp. Counsel, U. S. Shipping Board Bureau, both of Washington, D. C., and Douglas W. McGregor, Asst. U. S. Atty., of Houston, Tex.

J. Newton Rayzor, of Houston, Tex., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

**HUTCHESON, Circuit Judge.**

Plaintiff, an independent contracting stevedore at Corpus Christi, Tex., duly qualified under section 937, title 33 USCA, Longshoremen's and Harbor Workers' Compensation Act (section 37), contracts there with the United States and other shipowners to load and unload ships at that port. In connection with its stevedoring operations for owners other than the United States, plaintiff took out and paid for compensation insurance with the Lumbermen's Reciprocal Association. In connection with stevedoring operations on vessels of the United States, the owner took out and paid for insurance on policies protecting the stevedore and owner. The suit is under the Tucker Act (28 USCA § 41 (20) for money plaintiff paid Means, one of its employees, in settlement of a compensation award he got against plaintiff as employer, and Lumbermen's Reciprocal Association as insurance carrier. The grounds are that defendant obliged itself to pay the sums sued for, by its agreement to protect plaintiff as stevedore, against legal liability to its employees by policies it took out as owner, containing the provision that for the purpose of insurance coverage, the employees of the stevedore working on defendant's ships should be considered the employees of the owner. The claim is that, relying on that agreement, plaintiff provided no insurance of its own, and that defendant stands liable to it to pay what the Lumbermen's Reciprocal Association, the insurer defendant provided, has agreed, but failed to pay. The argument is that plaintiff was engaged solely as a subcontractor "to load the cargo as part performance of defendant's contract to load, store, transport and deliver the same," and that by reason of the agreement defendant made with it to carry compensation insurance to cover plaintiff's employees as though they were its own,[1] and the terms of the policies it took out,[2] defendant became primarily and plaintiff only secondarily liable, for compen-

---

[1] "The Owner shall at its own cost and expense carry insurance protecting the Stevedore against (a) liability to the public for which the Stevedore is liable in the amount of Ten Thousand Dollars ($10,000) indemnity for injury to or death of any one person and Twenty Thousand Dollars ($20,000) for any injury to or death of any number of persons in a single accident, (b) liability arising under workmen's compensation laws of the state in which the stevedoring work is performed for injury to or death of employees, and (c) any liability whatsoever for which the Stevedore is legally liable to employees, in the amount of Ten Thousand Dollars ($10,000) indemnity for injury to or death of any one employee, and Twenty Thousand Dollars ($20,000) for any injury to or death of any number of employees in a single accident, by policies insuring the Owner which shall provide that for the purposes of the insurance therein provided all the employees of the Stevedore engaged in the work covered by this schedule shall be considered employees of the Owner."

[2] The policies in standard form, listed

sation due plaintiff's employees, so that, for any moneys plaintiff was compelled to pay as compensation, defendant is liable to reimburse it.

These are the facts: In June, 1931, one Means, an employee of plaintiff, while loading cargo on the West Chatala, United States owner, received compensable injuries. In October, 1931, an award was entered against plaintiff as employer and the Lumbermen's Reciprocal Association as insurance carrier in Means' favor for $259.99 and $29 medical expenses. The association became insolvent, and was placed in receivership July 31st. Still in liquidation, it has not responded. Plaintiff, though completely solvent and able to pay the full amount of the award, effected a settlement with Means by paying $160 cash and agreeing with him to prosecute a claim against the Lumbermen's Association for its and Means' joint benefit. There was testimony of the receiver that in his opinion the association would in final liquidation pay 50 cents on the dollar of claims against it. On the issue of compensation coverage by insurance the proof shows that since June, 1919, Shipping Board vessels have been operating in the Gulf ports of Texas, their stevedoring done there by private stevedoring contractors. Before August 7, 1919, the contractors wrote their own compensation insurance, and paid the premiums on it. Their bills, rendered to the Board for stevedoring, included the cost of such insurance, which varied according to the loss experiences of the several contractors. Since August 7, 1919, the charges made for stevedoring operations on Shipping Board vessels have been cost of handling cargo less the cost of insurance, which was arranged for by the owners.

By doing this it secured, first, reduced insurance costs; second, greater coverage. The policies as written by the stevedores covered only their own operations; they did not protect the ship. Those arranged for by the Shipping Board protected the ship as well. After the passage of the Longshoremen's and Harbor Workers' Act, so that the stevedores would be in compliance with sections 37 and 4 of the act (33 USCA §§ 937, 904), the policies insured them as well as the United States by name. Until September, 1929, this insurance was carried in two companies, the Texas Employers' and the Employers' Liability Companies. Effective then, coverage was, with the knowledge and consent of plaintiff, transferred to the Lumbermen's Reciprocal Association at a 20 per cent. reduction in rate; indeed, plaintiff insured its operations on ships of other owners in the same Association.

The District Judge found for plaintiff. He thought that section 904, title 33 USCA, made both plaintiff and defendant liable for compensation for injuries provided for by the act to the employees of plaintiff engaged in unloading defendant's vessels. He found that "Under such Act, as between plaintiff and defendant, defendant is primarily and plaintiff secondarily liable to such employees, and if defendant fails to pay the compensation and thereby plaintiff is compelled to pay the same, plaintiff is entitled to recover from defendant the amount so paid." He thought, too, that the proof was sufficient to show that plaintiff would make some recovery from the association, and that his ultimate loss would be not the amount he had paid Means, but $95. He gave judgment for this amount.

The United States challenges as erroneous

---

as subscribers the United States of America and the United States Shipping Board Merchant Fleet Corporation and/or Boyd Campbell Company, Corpus Christi. By indorsement it was provided:

"Whereas the Subscriber mentioned in the contract to which this endorsement is attached contracts with stevedoring contractors for the performance of stevedoring work in the course of which work the employees of such stevedoring contractors are to be regarded as the employees of the Subscriber, and

"Whereas The Subscriber intends to effect this insurance to make it certain that all claims by third parties against loss from the liability imposed by law upon such contracting stevedores * * * because of the operations of such contracting stevedores and their employees,

such liability is, within the terms and conditions of this contract, assumed by the Association for and on behalf of the Subscriber. * * * The Subscriber shall pay premiums at the rates mentioned in the schedules on the third page of the contract of the aforesaid stevedoring contractors, or require the aforesaid stevedoring contractors themselves to pay the same direct to Lumbermen's Reciprocal Association. * * *

"It is hereby understood and agreed that the undermentioned contract shall cover all such operations as though undertaken by direct employees of the subscriber and the subscriber shall pay a premium calculated on such operations exactly as provided in the contract, or in any endorsement attached thereto, with respect to operations under the employer's direct control."

the judgment and the conclusions on which it rests. A goodly portion of its brief is devoted to the proposition that no one had authority to bind it, and therefore the United States was not bound as insurer or indemnitor, either to the employees of plaintiff or to plaintiff. It insists, as to the theory of liability by statute which the trial court put forward, that the United States is not, it cannot be, held to be an employer and liable under the Longshoremen's and Harbor Workers' Act. It insists that this is made clear in the act, both by its general purport with its provisions for fines and imprisonment against noncomplying owners, and by the specific provision of section 903 (a) (2) that "no compensation shall be payable in respect of the disability or death of ˙ * ˙ an officer or employee of the United States or any agency thereof." It argues further that, if the United States could be liable as a contractor under section 904, under the conditions fixed for such liability by that section, it could not be held liable here, for the very condition that gives rise to the liability there, that a subcontractor has not provided payment of compensation, does not exist here. It argues that the subcontractor has not only provided that payment here, but he has paid it by an arrangement satisfactory to the employee who does not complain. It argues further that the section was enacted not for the benefit of the subcontractor who has paid his employees, but for the benefit of employees who have not been paid; that nothing in it speaks of liability of the contractor over for sums which as the compensation the statute compels him to pay the subcontractor has paid his employees. As to the theory on which plaintiff puts its claim of liability, that the United States in effect agreed to stand as plaintiff's indemnitor and has breached that agreement, it argues that this will not stand examination; that the defendant made no such agreement; that what it agreed to do in the contract plaintiff claims under was to furnish policies of insurance covering and protecting plaintiff against liability for compensation; and this, exactly as it agreed to do, it has done. It insists that nothing in the words or the reason of the agreement obligated the United States to guarantee the solvency of the insurance carrier or to stand liable itself as insurer. As subordinate points it insists that plaintiff has no standing to recover here, even on its own theory because it has not paid the employee, but instead has undertaken, in the face of the statute forbidding it, to make settlement with him. And besides, in view of the fact that the insurance carrier is still in process of liquidation, and what it will pay is not known, the proof fails to show plaintiff's losses.

 We cannot agree with the District Judge that any case for statutory liability was made out, or with plaintiff that any case was made out by the agreement it relies on. Neither section 904 nor any other section of the statute of its own force applies to make the United States liable here as a contractor, nor does the policy by its provision that "the employees of plaintiff for the purposes of this insurance, should be treated as employees of the owner" bring defendant within the statute.

█ As to liability under the agreement, we put aside, as unnecessary to determine, all question of authority to make it, for we think it plain no breach of it has been shown. It was not agreed that the United States would become insurer or indemnitor. The policy was not intended to, nor did it, have that effect. The agreement and the policy evidence merely an arrangement for obtaining cheaper and fuller insurance coverage, protecting at once the stevedore and the ship, both insured in the same policy. The United States did not, either by preliminary agreement or in the policy, agree to insure plaintiff or its employees. It only agreed to provide and pay for insurance to which both plaintiff and its employees might look. The United States agreed to have insurance policies covering plaintiff's employees written; that agreement, as written, has been kept. It did not agree to insure the insurer or to carry the risk itself. These views make unnecessary the decision of appellant's subordinate points.

The judgment is reversed, and the cause remanded, for further proceedings not inconsistent herewith.