UNITED STATES v. DAVIS.

No. 8975.

United States Court of Appeals
District of Columbia.

Argued Jan. 16, 1946.

Decided March 18, 1946.

Mr. Lyle M. Turner, Special Assistant to the Attorney General, of the Bar of the Supreme Court of Missouri, pro hac vice, by special leave of Court, with whom Mr. Samuel O. Clark, Jr., Assistant Attorney General, Messrs. Sewall Key and A. F. Prescott, Jr., Special Assistants to the Attorney General, and Mr. Edward M. Curran, United States Attorney, and Mr. Daniel B. Maher, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellant. Mr. Francis M. Shea, Assistant Attorney General, and Mr. Sidney S. Sachs, Assistant United States Attorney, of Washington, D. C., also entered appearances for appellant.

Mr. John J. Wilson, of Washington, D. C., with whom Mr. Ringgold Hart, of Washington, D. C., was on the brief, for appellee.

Before CLARK, WILBUR K. MILLER, and PRETTYMAN, Associate Justices.

PRETTYMAN, Associate Justice.

The United States appeals from a judgment of the District Court rendered against it in a civil action for the recovery of taxes, penalties and interest collected under the Federal Insurance Contributions Act.[1] Appellee Davis, who was plaintiff below, is a member of the Independent Taxi Owners Association and owns nine taxicabs. During the period here involved, through the Association as his agent, he leased a cab to one Hoff under a rental agreement. The agreement recited that Hoff, in consideration of the assignment to him of a taxicab, accepted the cab from day to day, upon a rental basis, at the rate fixed by members of the Association for that particular cab. Hoff agreed that he would comply with an order of the Public Utilities Commission requiring him to record on a manifest all trips made by the cab while operated by him, showing the time and place of origin and destination of each trip and the amount of fare; that he would purchase at his own expense all gasoline used in the operation of the cab from stations designated by the members of the Association; that he would observe and comply with all rules and regulations adopted by the members of the Association, particularly those applying to courtesy, service, rates, safe driving, obedience to traffic regulations, and reporting to the chief dispatcher of the Association before leaving on any trip to points beyond the established $2.50 flat-rate limit; that he would report each day, unless unavoidably detained, at the "Diamond service lot"; that he would not knowingly permit any other person to operate the cab assigned to him; and that he would be responsible to the owner of the cab for any damage to it by reason of his negligent act.

The Independent Taxi Owners Association is a non-profit, non-stock Delaware corporation. It does not operate or rent taxicabs except as agent for its members. During the period here involved, it had approximately 500 associate members and 100 full members, the latter owning between 600 and 700 cabs, most of which were rented to drivers. The Association selected a color scheme and a design containing a diamond, which gave the cabs their popular name; operated a switchboard; procured concessions at various important points in the City; maintained a sinking fund to meet liability for injuries to others; created a subsidiary for the sale of gas, oil, tires and accessories to members and drivers, and bought group life insurance and paid sick benefits.

The meter system is not in use in the District of Columbia. The Public Utilities Commission is forbidden by statute to require the use of meters and has, therefore, established a zone system of taxicab fares.[2] The rental system in use was the outgrowth of that combination of circumstances.

The rental between Davis and Hoff was fixed orally at $3.00 per day. Hoff estimated that his gross "takings" during the period involved were somewhere between $6 and $8 a day, and his net $3.50 to $4 a day. Davis paid no money or other remuneration whatever to Hoff. Hoff rendered no service to Davis but operated the cab in his own behalf, collecting money from passengers and retaining it without accounting to Davis for any part thereof.

[1] Act of Aug. 14, 1935, 49 Stat. 636, as amended, 53 Stat. 1381, 56 Stat. 981, 57 Stat. 607, 58 Stat. 93, 58 Stat. 812, and an act of Nov. 8, 1945, c. 453, Tit. IV, § 401, 59 Stat. 576, 26 U.S.C.A. Int.Rev. Code, § 1400 et seq.

[2] D.C.Appropriations Act of June 4, 1934, 48 Stat. 846, 849, and all subsequent acts.

Hoff bought and paid for, with his own funds, the gasoline used by him, purchasing some at the "Diamond lot" and some elsewhere, whichever was more convenient. Hoff could drive where and when he chose and for whatever length of time he desired, and was not required by Davis to cover any particular route or stand, although the court below thought it reasonable to find that if the cab had remained idle for any great length of time and without adequate cause, Davis would have cancelled the lease. Davis did not possess the right to say whether Hoff should work a day or night shift. The trial court referred to the rules of the Association which the rental agreement required Hoff to obey, and made the following finding of fact:

"In my judgment these rules and covenants do not entitle taxpayer to control and direct Hoff in the operation of his taxicab business either as to the result to be accomplished or as to the details or means by which that result is to be accomplished. Hoff conducted a business on his own account, running the risk of loss and enjoying the advantages of success, free from the right of taxpayer to control or direct him either as to the result of [sic] the details and means by which that result was to be accomplished."

The Commissioner of Internal Revenue made a ruling applicable to all members of the Association operating taxicabs under circumstances similar to those above-recited. He held that the driver-lessees are employees of the owner-lessors for the purposes of the taxes imposed by the Social Security Act and the Federal Insurance Contributions Act. He further held that it would be necessary that the driver-lessees of the taxicabs furnish the owner-lessor "with sufficient information to enable him to determine the amount of their wages, which are considered to be composed of the total receipts or fares, less the amount paid to [the owner] under the agreement and less any, expenses, such as purchases of gasoline, sustained by the drivers in the operation of the cabs." In accordance with that ruling, the present appellee, Davis, made returns for the period January 1, 1941, to June 30, 1942, and paid the taxes, penalties and interest in connection therewith. The taxes thus assessed and collected were based upon an agreed average "takings" of taxicab drivers in the District of Columbia during the period

involved, which was $3 per day. Davis claimed a refund of the amounts paid, the claim was denied, and he brought this action to recover.

The trial court found as a fact that the agreements involved in the case were not entered into for the purpose of evading payment of Social Security taxes.

The question before us, as it related to the operation of taxicabs in the District of Columbia by the Yellow Cab Company, was considered by the District Court for the District of Maryland and by the Circuit Court of Appeals for the Fourth Circuit in Yellow Cab Co. v. Magruder, D.C., 1943, 49 F.Supp. 605, and Magruder v. Yellow Cab Co. of D. C., 1944, 141 F.2d 324, 152 A.L.R. 516. The operations in that case were substantially identical to those in the present case, except that there the company was the owner. The opinion of the District Court, by Judge Chesnut, reflected an exhaustive consideration of the problem, and his views were adopted by the Circuit Court of Appeals, in an opinion by Judge Dobie. We agree with the views expressed in those two opinions. It is unnecessary to repeat the considerations which led those courts, and lead this court, to conclude that the driver of a taxicab, under the circumstances stated, is not an employee of the owner of the cab within the meaning of the statutes under which these taxes were collected.

Appellant relies, principally, upon Jones v. Goodson, 10 Cir., 1941, 121 F.2d 176, in which the Circuit Court of Appeals for the Tenth Circuit, considering the operation of taxicabs by the Y & Y Operating Company in Oklahoma City, held that the drivers were employees of the Company. We think, as both courts thought in the Yellow Cab Company case, supra, that the facts in that case distinguish it. In the Jones case, the court found that the drivers were members of a local union which had a master contract with the Company which provided, among other things, that the union should furnish the Company competent drivers; specified maximum rentals, maximum mileage per shift, and provided that the Company might, at its option, operate the cabs on a percentage basis. It found that the Company and the drivers had no other contract. The court found that the Company had, and exercised, the right to say whether the drivers should work on a day or night shift; to require that drivers purchase all their gasoline from the Com-

pany; to require that drivers operate only within the city limits; to require that they telephone the main office hourly, giving their whereabouts; and that it had the right to discharge for violation of these requirements. The court held that these rights of the Company were substantial and that they related to the method and means of performing the service. This brief recitation of the key facts in that case is sufficient to demonstrate the wide difference between it and the case at bar.

Appellant contends that the decisions in the Yellow Cab Company case, supra, and the decision of the District Court in this case are not in harmony with the decision of the Supreme Court in Williams v. Jacksonville Terminal Co., 1942, 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914, which arose under the Fair Labor Standards Act, 29 U.S. C.A. § 201 et seq., and in which, appellant says, a similar contention was made. We do not find that the decision in that case is pertinent to the present problem. The question there was whether tips received by porters at a railroad station and reported by them to the Terminal Company should be considered wages under the Minimum Wage Law. The Court made it clear that it was agreed by all parties that the porters in question were employees of the Company. The Court pointed out that the word "wages" has different meanings under different statutes; that tips may be included or excluded according to the language or the purpose of the Act, and specifically mentioned that, so far as employment taxes are concerned, the Social Security Board has by regulation excluded tips from the computation of wages.

Appellant also cites and relies strongly upon National Labor Relations Board v. Hearst Publications, 1944, 322 U.S. 111, 124, 64 S.Ct. 851, 88 L.Ed. 1170, and Grace v. Magruder, 1945, U.S.App.D.C., 148 F.2d 679, in the former of which the Supreme Court held that common law rules as to distinctions between employees and independent contractors are not controlling in determining questions under the Fair Labor Standards Act, and in the latter of which this court applied the same doctrine to questions arising under the Social Security Act. The distinction between the relationship of lessors and lessees of taxicabs in Washington, as considered in the Yellow Cab Company case, supra, and the relationships of the persons involved in Grace v. Magruder, supra, Williams v. Jacksonville

Terminal Co., supra, and National Labor Relation Board v. Hearst Publications, supra, was pointed out by this court in its opinion in Grace v. Magruder, supra. That discussion need not be repeated here.

Affirmed.