JIMMY EVANS, EMPLOYEE, v. TABOR CITY LUMBER COMPANY AND/OR
WACCAMAW LUMBER CORPORATION, INSURED BY EMPLOYERS'
MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, AND/OR
G. J. MARTIN, NON-INSURER, ALLEGED EMPLOYERS.

(Filed 24 May, 1950.)

**1. Master and Servant § 55d—**

While findings of fact of the Industrial Commission are conclusive on
appeal when supported by evidence, G.S. 97-86, the courts must review the
reasonableness of the inferences of fact deduced from the basic facts
found, and the conclusions of law predicated upon them.

**2. Master and Servant § 38c—**

A lumber company which purchases timber on the basis of a stipulated
price per thousand feet when processed into lumber by it, and which is
given the privilege of going upon the land and cutting and logging the
timber to its site, cannot be held a contractor of the owners of the timber
in the performance of the logging operations, and therefore a person
employed by it to conduct logging operations cannot be a sub-contractor
within the meaning of G.S. 97-19, and the statute has no application in
determining the liability for injury to one of the workmen employed in
the logging operations.

**3. Same: Master and Servant § 39b—**

Where a lumber company, pursuant to its contract for the purchase of
timber, engages in logging operations, and a workman is injured in the
course of his employment relating thereto, the Industrial Commission
should find from the evidence whether the person employed by the lumber
company to perform the logging operations was an employee or an inde-
pendent contractor in order to determine the respective liabilities of the
parties for compensation for injury to the workman.

**4. Master and Servant § 55g—**

Where the award of the Industrial Commission is erroneous, the courts
may not on appeal make an award pro or con from the evidence, but will
remand the cause to the Industrial Commission for proper findings of fact
and conclusions of law.

DEFENDANTS' Waccamaw Lumber Company, Tabor City Lumber Com-
pany and Employers' Mutual Liability Insurance Company of Wisconsin
appeal from Crisp, Special Judge, November 1949 Term, COLUMBUS
Superior Court.

*J. B. Eure for plaintiff, appellee.*
*David M. Britt for defendants, appellants.*

SEAWELL, J.   Our review concerns a claim of the plaintiff claimant
filed with the Industrial Commission against the defendant lumber com-

pany for whom its codefendant insurance company is insurance carrier, and defendant Martin, non-insurer, as employers, seeking an award for an injury for which it is contended they are liable under the Workmen's Compensation Law.

The hearings before the Industrial Commission resulted in an award of compensation to the claimant, and from this award an appeal was taken to the Superior Court where the award was affirmed; and the defendants or respondents appealed to this Court.

The claimant contends that at the time of his injury he was in the employment of the defendant Martin in logging timber from a tract of land in Columbus County, and that Martin was sub-contractor of the logging operations under his codefendant, the Waccamaw Lumber Company, which because of its relationship to the owners of the timber, Holliday Brothers, was the original contractor in such logging operation, and that both the defendant Martin and his codefendant, the Waccamaw Lumber Company and the insurance carrier are all liable under the Workmen's Compensation Act, G.S. 97-19, which reads as follows:

> "Any principal contractor, intermediate contractor, or sub-contractor who shall sublet any contract for the performance of any work without requiring from such sub-contractor or obtaining from the Industrial Commission a certificate, issued by the Industrial Commission, stating that such sub-contractor has complied with 97-93 hereof, shall be liable, irrespective of whether such sub-contractor has regularly in service less than five employees in the same business within this State to the same extent as such sub-contractor would be if he had accepted the provisions of this Article for the payment of compensation and other benefits under this Article on account of the injury or death of any employee of such sub-contractor, due to an accident arising out of and in the course of the performance of the work covered by such sub-contract. If the principal contractor, intermediate contractor, or sub-contractor shall obtain such certificate at the time of subletting such contract to sub-contractor, they shall not thereafter be held liable to any employee of such sub-contractor for compensation or other benefits under this Article. The Industrial Commission, upon demand, shall furnish such certificate, and may charge therefor the cost thereof, not to exceed twenty-five (25) cents. Any principal contractor paying compensation or other benefits under this Article, under the foregoing provisions of this section, may recover the amount so paid from any person, persons, or corporation who, independently of such provision, would have been liable for the payment thereof. Every claim filed with the Industrial Commission under this section shall be insti-

tuted against all parties liable for payment, and said Commission, in its award, shall fix the order in which said parties shall be exhausted, beginning with the immediate employer."

Inasmuch as it is admitted, or at least the evidence clearly shows, that the injury was by accident arising out of the employment and in course thereof, and that at that time the combined number of employees of Martin and the Waccamaw Lumber Corporation exceeded the number required for application of the Act, and other facts necessary to sustain the award, the controversy narrows down to the determination of the relationship existing between the Waccamaw Lumber Corporation and Holliday Brothers, of South Carolina, respecting the ownership of the timber which Martin was cutting and carrying to the mill site of the Lumber Company and for which the latter company was paying Holliday Brothers a stipulated price per thousand feet as and when the timber was cut and delivered to the mill.

The evidence on that particular point, mostly advanced by the defendant Lumber Company or its officers and codefendant Martin, is substantially as follows:

W. F. Maurer, secretary of the Waccamaw Lumber Corporation, testified repeatedly that the lumber company did not purchase the timber on the tract and that it belonged to Holliday Brothers:

"Q. So that the Waccamaw Lumber Co. did own the timber?

"A. Waccamaw Lumber Company did do what?

"Q. Did own the timber?

"A. No, I said we just paid for it as it was cut.

"Q. My understanding, Mr. Maurer, that you said the Waccamaw Lumber Company bought the timber and Mr. Martin cut it?

"A. I said that the timber belonged to the Holliday Brothers which is, I imagine, the P. D. Farms, Inc., Gallavant's Ferry, S. C.

"Q. Well now, did Mr. Martin buy the timber?

"A. No sir, he did not buy it.

"Q. Who bought it?

"A. Nobody bought it. We paid for it as it was cut.

"Q. Well, didn't you all buy it?

"A. We didn't buy it until we had it. Then we bought it.

"Q. Mr. Maurer, I think we're just splitting hairs here a little bit.

"A. Can I tell you this, where we buy the timber, that tract, that timber we consider ours. We can cut it when we want to.

"Q. Well, as I understand it, the officials of the Waccamaw Lumber Company made a trade with the owner of this timber by which the Waccamaw Lumber Company after having the timber cut and

hauled to the mill to pay the original owner of the timber so much a thousand for what they had cut and hauled to the mill, is that correct?

"A. Yes, sir."

The defendant Martin testified: "Mr. Maurer has testified correctly as to my relationship with the company." Pursuant to questions by the court, he further testified:

"I know the arrangements Waccamaw Lumber Company had with the owners of the land where claimant was hurt. The Hollidays wanted to sell the timber and they couldn't agree on a lump price, therefore, Waccamaw Lumber Company agreed to deliver them $20.00 per thousand feet for what they cut. After it was delivered to the mill they were to give them $20.00 a thousand for the logs. The timber was to be cut clean, ten inches up. They couldn't agree on the stumpage so agreed by the thousand and were to be paid after the logs were delivered to the mill.

"This is the usual agreement on a tract of timber where they can't agree on a lump sum. Sometimes they go out in the woods, look at the timber and when they can't agree on the footage they get down and agree per thousand."

Upon this evidence the commission found as facts:

"That the defendant, the Waccamaw Lumber Company, sometime prior to the date the plaintiff was injured, entered into an agreement or contract with the owners of the tract of timber where the plaintiff was working at the time he was injured to cut said timber, transport it to the mill and to pay the said owners of the timber, namely, the Holliday Brothers, the sum of $20.00 per thousand after the logs were delivered to the mill for the amount which was cut by said Waccamaw Lumber Company. The agreement, which was oral, further provided that the timber which was cut was to be cut clean and not more than ten inches from the ground; that the defendant, the Waccamaw Lumber Company, was therefore the principal contractor in connection with the cutting of the timber on the tract of land on which the plaintiff was injured."

\*    \*    \*

"The Commission specifically finds as a fact that the defendant, G. J. Martin, at the time the plaintiff was injured was a sub-contractor of the defendant, the Waccamaw Lumber Company, said Waccamaw Lumber Company having originally contracted with the owners to cut and transport the timber to said defendants, Waccamaw Lumber Company's mill, and pay said owners for the timber when it

was transported to the mill; that the plaintiff employee, Jimmy Evans, at the time he suffered his injury by accident was an employee of G. J. Martin, sub-contractor of the principal contractor, the Waccamaw Lumber Company; that the principal contractor, the Waccamaw Lumber Company, at the time it contracted with the said G. J. Martin to cut and haul some of the timber on the tract owned by the Holliday Brothers did not require said sub-contractor to obtain workmen's compensation insurance nor require said sub-contractor to obtain a certificate from the Industrial Commission that he had complied with G.S., Paragraph 97-93."

And concluded as a matter of law:

"(1) The Waccamaw Lumber Company was the principal contractor in connection with the logging and transporting of the timber on the tract of land owned by the Holliday Brothers. The defendants contend that the Waccamaw Lumber Company was not a contractor but the owner of the timber. If said Waccamaw Lumber Company had purchased the timber for a lump sum amount or had acquired a timber deed for said timber, the Commission is of the opinion that they would be the owners thereof but instead they simply contracted with the owners to cut and deliver some of the merchantable timber to their mill and after it was delivered, to pay said owners so much per thousand for the timber which they cut and transported. This was just as much a contract as was the contract between the Waccamaw Lumber Company and the defendant, G. J. Martin, to cut and deliver some of the merchantable timber from the tract of land owned by the Holliday Brothers to the mill and receive so much per thousand for doing said work.

"(2) The word 'sub-contractor' is generally understood. The prefix 'sub' in the sense it is used here means subordinate, secondary, inferior, lower in position, grade or rank. Therefore, from all the evidence the Commission concludes as a matter of law that the defendant, G. J. Martin, was a sub-contractor for the principal contractor, the Waccamaw Lumber Company, in connection with the cutting of the timber on the tract of land on which the plaintiff was injured."

The Commission further found that the defendant G. J. Martin is primarily and first liable to the plaintiff for the compensation award; and concluded as a matter of law that if plaintiff was not able to obtain the compensation from the defendant Martin after having exhausted his legal remedies, that defendants Waccamaw Lumber Company and its insurance carrier were liable for the payment of compensation to the

plaintiff for temporary total disability, making specific schedules and terms of payment, and made a corresponding award.

Other matters of detail not fully set out above have not been considered important to the record in view of our decision. Nevertheless, it may be said that they were of a character to sustain the award both as to evidence and conclusions of law, except in the respects herein noted.

We are unable to sustain the findings of fact or the conclusions of law made by the Industrial Commission and affirmed by the lower court with respect to the liability of the Waccamaw Lumber Co. The defendant Martin has elected not to come under the provisions of the Workmen's Compensation Act. If the Waccamaw Lumber Company had been in fact and in law an original contractor within the provisions of such Act, G.S. 97-19, he would be liable with the codefendant; but not as we view it in the present proceeding.

The appellee calls attention to the rule that this Court is bound by the Commission's finding of fact when there is any evidence to support it. This is true, of course. G.S. 97-86, and annotations. But the principle must be applied with discrimination. A "fact found" upon supporting evidence may be posited as an evidentiary fact purporting to establish the existence of another, or other facts or factual situations necessary to the final result; or leading to a question of fact and law, or a conclusion of law upon which the decision or award is necessarily predicated. It is still the office of this Court to determine whether a reasonable inference may be drawn from the basic fact, or facts, found by the Commission tending to establish the other facts in sequence, or the conclusions predicated upon them. The question primarily is one of probative value in the several sequences.

The Commission has found several facts in connection with the contract between the lumber company and Holliday Brothers as follows: That the lumber company did not buy the entire tract of timber at a bulk price but did purchase such timber as was logged by the Lumber Company, carried to the mill and converted into lumber, at so much per thousand feet; that it did agree to cut the timber upon the site of its operation clean, in accordance with the specifications given. The Commission is of the opinion that this is evidence pointing to its conclusion as to facts and law that the lumber company thereby undertook, *for and in behalf of* the owners of the timber, to do the logging for them, transport the timber to the mill site, where the duties to be performed by the owners then ended and the timber, when converted, became that of the lumber company, to be paid for according to the ascertained footage.

We cannot see how for the purpose of this case it makes any difference whether the lumber company had bought the entire tract at an upset price upon an estimated footage, or whether they bought the timber piece-

meal in the manner contended for by the defendants and adopted by the Industrial Commission in making the award. The principle is the same.

In analyzing any bilateral contract in order to see the several duties imposed upon either of the parties thereby, there is the prime necessity of determining upon which of the parties rests consideration and duty; and no matter which way we consider terms of the contract under consideration, it is not susceptible to the interpretation that the logging operation performed by the lumber company became a duty to be performed by the Holliday Brothers or that any consideration moved from them to the lumber company for its performance for them by the lumber company. Entrance upon the premises by the lumber company or its agents, or those clothed with the authority to do so, cutting or logging the timber and transporting it to the site where it was to be cut into lumber, was clearly a privilege granted by the owners in the contract to facilitate an operation which the lumber company carried on in its own behalf.

The logic of the Industrial Commission in concluding that there can be no sub-contractor without an original contractor is unimpeachable; and by "original contractor" is meant one who has undertaken for another to do something, the performance of which he has in whole or in part sublet to another. It would be unreasonable to assume that a person could contract with himself to do something for his own benefit so as to answer the definition of original contractor if he should contract the performance of that operation to another person or concern.

We are, therefore, of the opinion, and so find, that Martin was not a sub-contractor within the meaning of the statute, G.S. 97-19, and that this statute has no application.

However, neither this Court nor the Superior Court has the right to make an award *pro* or *con* upon the evidence which was submitted or which may be submitted before the Industrial Commission. *Reed v. Lavender Brothers,* 206 N.C. 898, 172 S.E. 877; *Walker v. Wilkins,* 212 N.C. 627, 194 S.E. 89.

Referring to the rationale of the decision in making its award, it appears that the Industrial Commission, basing its decision entirely on the application of the cited statute, did not pass upon the question whether Martin was an independent contractor, whether there was evidence in that respect, or want of evidence, either *pro* or *con.* We cannot, as we have said, make an award for them. The case is therefore remanded to the Superior Court, which in turn will remand the proceeding to the Industrial Commission to make its findings of fact and conclusions of law in that respect upon such evidence as may be before it.

Error and remanded.