BEN C. WILLIS, Circuit Judge.
Alma Jenkins petitions for a writ of certiorari to review a Workmen’s Compensation order of the Florida Industrial Commission (Sec. 440.27, Florida Statutes F.S. A.; FAR 4.1 and 4.5(c), 31 F.S.A.) affirming with a minor modification an order and award of a deputy commissioner. Mrs. Jenkins is the claimant of benefits under Sec. 440.16, Florida Statutes, F.S.A., as the dependent widow-of Adam William Jenkins, who, on April 13, 1961 was shot and killed by the passenger of a taxicab Mr. Jenkins was operating. Though the petitioner has posed several points to support a quashal of the challenged order, the sole issue of any substance is whether or not the respondent H. D. Peddie was an employer of the petitioner’s deceased husband and thus responsible for workmen’s compensation benefits. The deputy and the full commission *730 held that Peddie was not the decedent’s employer but that the respondent Goodson was. An award for benefits was made to the petitioner against Goodson. The petitioner contends she should have them against Peddie also.
The record and the deputy’s findings show the following facts. Peddie, doing business as Victory Cabs, held a franchise, pursuant to ordinance of the City of Tallahassee, to operate a taxicab stand, business or service in the City of Tallahassee. Under the terms of the ordinance he was to operate a minimum of five cabs. On the date in question, April 13, 1961, he was operating six cabs from a taxicab stand which he operated and which was provided with a dispatcher, who received calls for service and with use of a check list would dispatch cabs available in a rotating order by number. At that time there were several other independent individuals, including the respondent Goodson with four cabs, who operated out of Peddie’s Victory Cab stand under an arrangement with Peddie to pay him a flat sum of $2.00 per day per cab for use of the taxicab stand and for use of the Victory Cab name, dispatch service and parking rental at the stand. Apparently these independently owned cabs were in the rotation cycle for dispatch along with Peddie’s own cabs. The francise ordinance clearly contemplates that a franchise holder may enter into an arrangement with others owning taxicabs to allow such cabs to operate from his stand. A “certificate” is given to the franchise holder and “licenses” are issued to and paid for by the individual owners of the cabs. Railroad and Public Utilities Commission permits to operate the cabs are issued to the individual owners. All expenses of operations, including compensation for cab drivers, are arranged for and paid by the individual owners of the vehicles. The cab owner deducts social security from the pay of the drivers and remits same to the proper authorities.
The cabs are uniformly painted and marked as “Victory Cabs” and are each given a number so that both Peddie owned cabs and those of other individuals operating from his stands give the appearance of all being part of a single fleet or operation. However, the drivers’ earnings are kept separate from each other and from those of Peddie, and the driver or owner of a cab determines when it is to be in service and during what hours it is to be operated. Peddie, under the franchise, is under a duty to see that owners and drivers comply with the requirements and conditions of the franchise, but the franchise contains no terms prescribing any remunerative obligations or requiring workmen’s compensation benefits to the drivers of cabs not owned or directly operated by him.
The petitioner’s decedent was employed by the respondent Goodson to drive one of his cabs and was so engaged when he was killed. Then there existed the setting of the workings and relationships in the operation of the taxicab service from Ped-die’s stand as above outlined. It is undisputed that he was killed in the course of his employment, that his death arose out of it, and that the petitioner is entitled to the compensation benefits of a dependent widow. Under the facts shown the decedent was not an employee under F.S.A. § 440.-02(2) of Peddie, either under a direct contract, or as a loaned employee, or as a special employee under a dual employment arrangement, or any other condition where there are conventional attributes of the master and servant relationship. It is true that Peddie had the right to “fire” Mr. Jenkins, but this was only because such power was necessary for him to be responsive to-the franchise requirement of running a proper taxicab service. He did not have the power to hire a driver for one of the independent cab owners. This power to' cause a termination of Jenkins’ employment by Goodson would not alone, or in conjunction with the other facts shown in this record, create between Peddie and Jenkins the relationship of employer and employee under F.S.A. § 440.02.
A case involving somewhat similar facts and in which the Court reached the same *731 conclusion as is readied here is Fidelity & Casualty Company of New York v. Windham, 209 Ga. 592, 74 S.E.2d 835, decided by the Supreme Court of Georgia. In this case, in which the subject is fully discussed, there Is cited with approval Coviello v. Industrial Commission of Ohio, 129 Ohio St. 589, 196 N.E. 661, a case with similar facts and "holdings. With regard to the rulings of federal courts considering the existence vel •non of the relationship of employer and -employee between a taxicab owner and a ■driver of an automobile operated as a taxi under a lease or rental arrangement with the owner, the following have held no such relationship existed within the purview of the Federal Insurance Contribution Law, 26 U.S.C.A. 1400 et seq.; Magruder v. Yellow Cab Co., 4 Cir., 141 F.2d 324, 152 A.L.R. 516; United States v. Davis, 81 U.S.App.D.C. 35, 154 F.2d 314; Woods v. Nicholas, 10 Cir., 163 F.2d 615; Party Cab Co. v. United States, 7 Cir., 172 F.2d 87, 10 A.L.R.2d 358; New Deal Cab Co. v. Fahs, 5 Cir., 174 F.2d 318.
This leaves only the question of whether or not a statutory employment relationship was created by virtue of Sec. 440.10(1), Florida Statutes, F.S.A., which provides, in pertinent part:
“In case a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the -contractor shall be liable for and shall secure the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.”
Under this statute a “contractor” who sublets part of his “contract work” to a “subcontractor” is obligated to provide or make arrangements for providing workmen’s compensation benefits to the employees of the subcontractor.[1] As was held in Jones v. Florida Power Corp. (Fla.), 72 So.2d 285, 289:
“The clear implication in this part of the Act is that there must be a contractual obligation on the part of the contractor, a portion of which he sublets to another.”
and also:
“To ‘sublet’ means to ‘underlet’, Webster’s New International Dictionary; in the context in which it is used here, the effect of subletting is to pass on to another an obligation under a contract for which the person so ‘subletting’ is primarily obligated.”
Under the circumstances of this case it. does not appear that Peddie, the certificate holder of the taxicab franchise, would come within the classification of a “contractor” under the mentioned statute, nor is Goodson one of his “subcontractors”. The franchise and its acceptance imposes some contractual obligations on Peddie to the City of Tallahassee. However, the arrangement he made with Goodson is not the passing on to the latter any obligation Peddie must in any event either perform himself or cause to be done by others. Peddie was obligated to operate not less than five taxicabs from his taxicab stand. This had been fulfilled with his own six cabs. His agreements with other independent taxicab owners to let them operate from and through his stand and under his trade name was pursuant to an optional privilege under his franchise and not in execution of his contractual obligations to the City or others.
The full commission modified the deputy’s order with regard to funeral expenses. It was directed that the award of $300.00 for funeral expenses be modified “to provide that the employer, Mr. Goodson, be given credit for any monies paid in connection *732 with the funeral expenses incurred; * The full commission predicated this action on the following observation.
“It does appear, however, from the record that certain funeral expenses have been paid by the employer, Mr. Goodson, and for which the deputy commissioner failed to give Mr. Good-son credit. Therefore, in this one respect the deputy’s Order should be modified to allow Mr. Goodson, the employer, credit for any funeral expenses he may have already paid.”
There is no substantial competent evidence in the record to support any finding that Goodson had paid any sum on the funeral expenses. The only evidence of funeral expenses is the statement of account rendered by the funeral director to Mrs. Jenkins in which a charge for the funeral expenses in the sum of $300.00 is made and a credit against this in the sum of $237.35 is given, leaving a balance due of $62.65. The credit item has this notation: “April 17, 1961 By Cash and Checks $237.35”. However, this evidence was received at a hearing prior to the time that Goodson was a party to the proceedings.[2] The petitioner’s brief, in discussing this point, states “If testimony were adduced on the point, it would show that these moneys [paid on the funeral expense] were derived from donations from other taxi drivers, policemen and other sympathetic persons.” The brief also observes that these moneys “may have been paid through Goodson, but it is questionable that any of the moneys as a matter of fact came from Goodson’s pocket.”
It is clear the Florida Industrial Commission committed a procedural error in modifying the deputy’s order by arbitrarily assuming a fact or possible fact not supported by competent substantial evidence in the record. However, it also appears that under the circumstances such error has not resulted in a miscarriage of justice. See F.S.A. § 54.23. If in fact it shall be developed by proper evidence that Goodson did pay from his own funds toward discharge of the funeral expenses, he should receive a proper credit for same. The error mentioned is harmless.
The other points raised have been examined and found to either be without merit or to have been harmless error.
The petition for writ of certiorari be and the same is hereby
Denied.
ROBERTS, C. J., and DREW, O’CON-NELL and CALDWELL, JJ., concur.

. Provided, of course, the aggregate number of the contractor’s and the subcon-contractors’ employees is three or more. Sec, 440.02(1).

. The claimant first made claim against Peddie on April 18, 1961. A hearing was held on this claim on May 25, 1961. An amended claim was filed on June 28, 1961 to bring in Goodson as a party and a further hearing was held July 31, 1961 with Goodson present but without an attorney. The record reflects an agreement by all parties that the evidence at the May 25, 1961 hearing would become a part of the record in the case.