**Tracie THORSHEIM, Administratrix of the Estate of Stanley Thorsheim, deceased, Appellant,**

**v.**

**STATE of Alaska, Employer's Liability Assurance Corporation, and Alaska Workmen's Compensation Board, Appellees.**

**No. 1090.**

Supreme Court of Alaska.

May 22, 1970.

---

William M. Erwin, Savage, Erwin & Curran, Anchorage, for appellant.

Charles Hagans, Hagans & Opland, Anchorage, for appellees.

Before BONEY, C. J., and DIMOND, RABINOWITZ and CONNOR, JJ.

## OPINION

BONEY, Chief Justice.

This appeal arises from a claim made under the Alaska Workmen's Compensation Act, and requires the interpretation of AS 23.30.045(a), our "contractor-under" provision.[1] A detailed review of the facts leading to this appeal will be appropriate at this point.

On July 17, 1966, the deceased, Stanley Thorsheim, while in the employ of James W. Harvey, d/b/a Harvey's Flying Service, was killed while flying an agent of the Department of Fish and Game of the State

---

1. AS 23.30.045(a) provides:
   An employer is liable for and shall secure the payment to his employees of the compensation payable under §§ 50, 95, 145, and 180–215 of this chapter. If the employer is a subcontractor, the contractor is liable for and shall secure the payment of the compensation to employees of the subcontractor unless the subcontractor secures the payment.

of Alaska on a stream survey flight. Thereafter, the appellant, Tracie Thorsheim, acting as administratrix of the estate of Stanley Thorsheim, filed an application wtih the Alaska Workmen's Compensation Board for death benefits under Alaska's compensation act. Through her application, the appellant sought recovery of death benefits, asserting that the decedent was an employee of Harvey's Flying Service; that Harvey's Flying Service had entered into a contract with the Department of Administration of the State of Alaska; that the terms of this contract required Harvey's to furnish the state certain specified types of aircraft complete with fuel, pilot and maintenance; and that the State of Alaska was therefore a prime contractor, and Harvey's Flying Service was both subcontractor and employer of Stanley Thorsheim. The appellant further contended that as a consequence of Harvey's Flying Service's failure to carry workmen's compensation insurance,[2] the Board should hold the State of Alaska liable as a contractor pursuant to AS 23.30.045(a).

A hearing was held before the Workmen's Compensation Board on February 17, 1967. At this hearing it was stipulated by counsel that the deceased was an employee of Harvey's Flying Service at the time the fatal accident occurred.[3] Several significant facts are brought out by the record before the Board. Testimony of an administrative officer employed by the Department of Fish and Game established that that department maintained its own fleet of airplanes used for hauling supplies and in connection with game counts, fish counts, and patrol work.

It was further established that since this fleet was inadequate to meet the total demands of the Department of Fish and Game at the times in question, a portion of this flying work had been contracted out to private carriers. It was additionally shown that these contracts with "private flying sources" resulted from contract bidding procedures which were instituted and conducted by the Department of Administration of the State of Alaska, and that the Department of Administration handled the bidding for and finalization of all such contracts on behalf of the Department of Fish and Game, as well as all other departments of the State of Alaska.

The contract in the present case was made following an Invitation to Bid (No. 1836) issued by the Division of Supply, Department of Administration, State of Alaska.[4] The subject matter of the invitation was characterized as "Charter of Aircraft for non-scheduled flights over various areas of Alaska." Pursuant to the invitation to bid, Harvey's Flying Service was awarded a contract for the period running from May 1, 1966, through April 30, 1967, with the state having the option of renewal for an additional period of one year. Under the terms of the contract, Harvey's was required to:

Furnish to the State of Alaska aircraft listed below at prices shown. Aircraft shall be complete with fuel, pilot, maintenance, and conform to all conditions and provisions as set forth in Invitation to Bid No. 1836.[5]

The contract award document was signed by Vern Roberts, "Buyer" on behalf of

2. At the hearing before the Board, counsel stipulated that Harvey's Flying Service did not carry workmen's compensation insurance at the time in question.

3. In its decision, the Board found that Stanley Thorsheim was an employee of Harvey's Flying Service at the time Thorsheim met his death.

4. The invitation for bid provided in part that "The contractors shall carry liability insurance in companies and in form satisfactory to the State and shall file with

the Division of Supply certificates in the following principal amounts within 15 days of notice of tentative award * * *" However, neither the invitation to bid nor the contract awarded thereunder contained any reference to the necessity of procuring workmen's compensation coverage.

5. In her deposition, Lola Harvey testified that the contract in question was a "blanket contract covering all state agencies."

the Division of Supply of the Department of Administration.

Following the hearing of February 17, 1967, the Workmen's Compensation Board issued a decision rejecting the appellant's contentions that the State of Alaska was liable under the provisions of AS 23.30.-045(a). In its decision, the Board concluded, in part, that:

> [W]ork being performed by Stanley Thorsheim at the time of his death was an integral part of the Harvey Flying Service and necessary to fulfilling its contract obligation to the State of Alaska. The State had specified in its award of Contract No. 3842 that Harvey Flying Service shall provide an aircraft with pilot. The Board does not find deceased applicant a subcontractor to Harvey Flying Service nor does it find Harvey Flying Service a subcontractor to the State of Alaska. The Board finds that the State is not in the business of a flying service but rather contracts with independent contractors to transport its personnel from place to place in order that such personnel may carry out their duties. * * * The Board concludes that the State of Alaska is not liable for death benefit payments of the surviving wife of the deceased applicant, that the State is not a contractor as set out by A.S. Sec. 23.30.045.

On the basis of these conclusions of law, the Board ordered that:

> The State of Alaska and its compensation insurance carrier shall be absolved of liability for death benefit payments under the Alaska Workmen's Compensation Act and Application for Adjustment of Claim filed by the applicant naming the State of Alaska as a defendant is dismissed.

An appeal was taken to the superior court, where the appellant sought to have the Board's order reversed. After appropriate pleadings had been filed, the appel-lees moved for summary judgment. The superior court affirmed the decision of the Board, holding, in relevant part:

> [U]nder the circumstances here the State of Alaska was not a contractor and Harvey's Flying Service was not a subcontractor within the meaning of the statute. [*i. e.*, AS 23.30.045(a), our "contractor-under" provision] Accordingly, I am of the opinion that plaintiff is not entitled to prevail in this action and that defendant State of Alaska is entitled to summary judgment as a matter of law.

In this appeal, we are called upon to decide whether, in the given circumstances, the State of Alaska was a "contractor" and Harvey's Flying Service was a "subcontractor" within the meaning of AS 23.-30.045(a). As it has been previously noted, this portion of AS 23.30.045(a) is referred to as the "contractor-under" provision, and states:

> If the employer is a subcontractor, the contractor is liable for and shall secure the payment of the compensation to employees of the subcontractor unless the subcontractor secures the payment.

The peculiar difficulty that confronts us in interpreting this provision in the context of the present appeal is the fact that there is no definition of the terms "contractor" and "subcontractor" given in the statutory language. In order to resolve the controversy of the appeal we must settle upon an appropriate definition for these terms.

"Contractor-under" statutes have been enacted in 42 states.[6] Professor Arthur Larson has described the general character of such provisions as follows:

> The purpose of this legislation was to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsi-

---

6. 1A A. Larson, The Law of Workmen's Compensation § 49.11, p. 853 (1967).

bility and insist upon appropriate compensation protection for their workers.

\*　　\*　　\*　　\*　　\*　　\*

The statute also aims to forestall evasion of the act by those who might be tempted to subdivide their regular operations among subcontractors, thus escaping direct employment relations with the workers and relegating them for compensation protection to small contractors who fail to carry \* \* \* compensation insurance.[7]　(Footnotes omitted.)

In the present case, the appellant asserts that the Workmen's Compensation law should be liberally construed in her favor. She further contends that, in view of the purposes of the "contractor-under" provisions, we should construe the terms "contractor" and "subcontractor", as used in our statute, to signify merely the relationship created between an employer and his employees by virtue of an existing contract.

The question of the proper definition of the term "contractor", as that term is used in AS 23.30.045(a), is one of first impression. The Alaska "contractor-under" statute was taken from the text of the federal Longshoremen's and Harbor Workers' Compensation Act.[8]　The provisions of the federal statute, like those of our own statute, fail to define the terms used therein. We have found no decisions under ·the Longshoremen's and Harbor Workers' Compensation Act in which the terms have been defined in a similar context.[9]

The "contractor-under" statutes adopted in the various states differ greatly in their language and in the scope of their coverage. A substantial group of states has apparently adopted ֽ "contractor-under" provisions which act, through explicit statutory language, to extend liability to employers who enter into contracts to have work done. Such statutes usually provide that a person will be liable under workmen's compensation as an employer if he contracts to have services rendered which are in the line of his usual business.[10]

---

7. *Id.* at 855–856, 858.

8. 33 U.S.C.A. § 904(a). This section provides:

    Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907, 908, and 909 of this title. In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor unless the subcontractor has secured such payment.

9. United States v. Boyd-Campbell Co., 72 F.2d 40 (5th Cir. 1934), should be noted as a case strikingly similar to the instant case. In that case the Circuit Court of Appeals reversed a District Court holding, Boyd-Campbell Co. v. United States, 5 F.Supp. 94 (D.C.S.D.Tex.1933). The lower court's decision had extended liability to the United States as a contractor under 33 U.S.C.A. § 904(a). Had the District Court's decision remained in force, it might well have been dispositive of the issues of the instant case. In reversing the lower court the Circuit Court of Appeals failed to make its grounds clear. Thus, in its final form, the Boyd-

Campbell case is of little assistance to us in the decision of the present appeal.

10. A good example of a case dealing with such a provision is Jamison v. Westinghouse Electric Corp., 375 F.2d 465 (3d Cir. 1967). The Jamison case construed § 203 of the Pennsylvania Workmen's Compensation Act. The section provided:

    An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

For examples of cases dealing with other similar "contractor-under" provisions, *see* Alexander v. Morrison-Knudsen Co., 444 P.2d 397 (Colo.1968), cert. denied, 393 U.S. 1063, 89 S.Ct. 715, 21 L.Ed.2d 706 (1969); Grenier v. Grenier, 138 Conn. 569, 87 A.2d 148 (1952); Henderson v. Sutton's Food City, Inc., 191 Kan. 145, 379 P.2d 300 (1963); Wysinger v. Godfrey, 86 So.2d 597 (La.App.1956); Eckmayer v. Newport, 267 S.W.2d 379

But another group of states has adopted "contractor-under" provisions similar to the Alaska statute.[11] While the language of such provisions varies from state to state, the common element of these statutes is their focus upon the contractor-subcontractor relationship as the basis for extending liability for injuries suffered by employees. In construing our own statutory provision, we are bound to follow common and approved usage.[12] Thus, even though the workmen's compensation laws are to be liberally applied in favor of claimants, we cannot simply disregard the fact that our statute uses the terms "contractor" and "subcontractor."

A proper focus on the definition of the terms "contractor" and "subcontractor" may be achieved by referring to the constructions placed upon these terms by courts in jurisdictions with statutes similar to AS 23.30.045(a). In Jenkins v. Peddie, 145 So.2d 729 (Fla.1962), a case raising issues similar to the ones raised by the present case, the Florida Supreme Court construed its "contractor-under" provision [13] and held:

Under this statute a 'contractor' who sublets part of his 'contract work' to a 'subcontractor' is obligated to provide or make arrangements for providing workmen's compensation benefits to the employees of the subcontractor. As was held in Jones v. Florida Power Corp. (Fla.), 72 So.2d 285, 289:

'the clear implication in this part of the Act is that there must be a contractual obligation on the part of the contractor, a portion of which he *sublets* to another. * * *' (Citation and footnote omitted, emphasis in the original.)

145 So.2d at 731. It is clear from this holding that the Florida court considered two factors determinative of the contractor-subcontractor relationship. The first requirement was the existence of a contractual obligation on the part of the person to be considered a contractor. A second requirement was the subletting of a part of the contractor's obligation to the person to be considered a subcontractor.

An almost identical view of the contractor-subcontractor relationship was taken by a Georgia Court of Appeals in Evans v. Hawkins, 114 Ga.App. 120, 150 S.E.2d 324 (1966). In that case, the court construed Georgia Code § 114–112, which provided:

A principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject-matter of the contract, according to their common and approved usage. * * *

(Mo.App.1954); Simon Service, Inc. v. Mitchell, 73 Nev. 9, 307 P.2d 110 (1957); City of Hudson v. Industrial Comm'n, 241 Wis. 476, 6 N.W.2d 217 (1942).

11. For examples of cases dealing with "contractor-under" statutes similar to AS 23.30.045(a), *see* Jenkins v. Peddie, 145 So.2d 729 (Fla.1962); Evans v. Hawkins, 114 Ga.App. 120, 150 S.E.2d 324 (1966); Rodgers v. Phillips Lumber Co., 241 Miss. 590, 130 So.2d 856 (1961); Evans v. Tabor City Lumber Co., 232 N.C. 111, 59 S.E.2d 612 (1950); Brygidyr v. Rieman, 31 N.J.Super. 450, 107 A.2d 59 (1954); Falsey v. Eastman, 22 A.D.2d 1003, 254 N.Y.S.2d 958 (1964); Dewhurst v. Simon, 295 N.Y. 352, 67 N.E.2d 578 (1946).

12. AS 01.10.040 provides in relevant part: Words and phrases shall be construed according to the rules of grammar and

13. The statute considered by the Florida court was Sec. 440.10(1), Florida Statutes, F.S.A., which provided in part:

In case a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for and shall secure the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.

to the same extent as the immediate employer.

The court in *Evans* noted that the terms "contractor" and "subcontractor" were not defined in the statute, and then went on to hold:

> [I]t is clear to this court that since the secondary liability imposed under this Code section is predicated upon the existence of the principal contractor-subcontractor relationship, this provision of the Compensation Act *is not intended to cover all employers who let out work on contract but is limited to those who contract to perform certain work,* such as the furnishing of goods and services, *for another, and then sublet in whole or part such work.* (Emphasis added)

150 S.E.2d at 326. Again, it is evident from this holding that the court contemplated as essential to the contractor-subcontractor relationship first the existence of a contractual obligation on the part of the person to be held a contractor, and second a subletting of a part of that obligation to the person to be held a subcontractor.[14]

▇▇ Thus, in accordance with the *Jenkins* and the *Evans* cases, we think the most appropriate definition of the term "contractor", as it is used in AS 23.30.045 (a), is: a person who undertakes, by contract, the performance of certain work for another, including the furnishing of goods and services. We hold the proper definition of "subcontractor" under AS 23.30.045(a) to be: a person to whom a contractor sublets all or part of his initial contractual undertaking. From these definitions it follows that a person who has not incurred a contractual duty cannot properly be deemed a contractor under our statute. Similarly, if a person enters into a contract to perform work, he cannot be construed to be a subcontractor unless the duty which he undertakes is at the same time part of a contractual duty of the party with whom he contracted.

14. For another similar construction of a "contractor-under" provision in a case somewhat analogous to the instant case,

▇▇ With this definition in mind, we turn now to the particular facts of the present appeal. In these facts we are unable to find any basis for holding that the State of Alaska was a contractor under the definition we have adopted. The argument has been set forth that the Department of Fish and Game may be considered to be the contractor in this case. The theory behind this argument is that the Department of Fish and Game undertook to perform the task of maintaining the state's fish and game for the State of Alaska. But in our view this argument overlooks the fact that the Department of Fish and Game acted as an integral part of the State of Alaska; the work of the Department of Fish and Game was the work of the state. In this sense, the Department of Fish and Game was not working as an outside party *for* the state. Even more importantly, any duties which the Department of Fish and Game actually had were not contractual, but existed by virtue of our constitution and statutes. Consequently, in this case it seems clear that the Department of Fish and Game cannot be considered as a contractor for the purposes of our "contractor-under" provision.

▇▇ We must similarly reject any argument that the Department of Administration, in acting to secure a contract for the Department of Fish and Game, and other departments of the state, became liable as a principal contractor pursuant to AS 23.30.-045(a). Once again we note that the Department of Administration and the Department of Fish and Game vere both integral parts of a single entity, the State of Alaska. The duties of these two departments were set out by constitutional and statutory mandate, and were not arrived at through bargaining between the two departments. The Department of Administration was not free to accept or reject requests for the provision of services; instead, it was bound by law to conduct bidding and provide requested services. In short, both departments

*see* Brygidyr v. Rieman, 31 N.J.Super. 450, 107 A.2d 59 (1954).

acted in their roles as parts of the machinery of state government, and the Department of Administration's obligation to conduct bidding was in no sense contractual.

It would be incredible to expect that, had the Department of Administration failed to conduct bidding, the Department of Fish and Game would have brought an action in equity for specific performance. It woud be equally incredible to suppose that, had Harvey's Flying Service failed to perform obligations under its contract, the Department of Fish and Game would have sought to hold the Department of Administration primarily liable for damages occurring from the breach.

Even assuming we were to find that the Department of Administration was under obligation sufficient to suit the purposes of our "contractor-under" provis we still do not think that, as between the Department of Administration and Harvey's Flying Service, a contractor subcontractor relationship existed. We think that, insofar as the Department of Administration had any duty with respect to the furnishing of flying services to other departments, this duty would extend only to the function of conducting bidding and securing contracts with companies or individuals who would actually provide the required services. In this sense, when the Department of Administration issued the contract to Harvey's Flying Service, it did not *sublet* to Harvey's any part of its obligation to the Department of Fish and Game. Rather, in conducting bidding and concluding the contract with Harvey's, the Department of Administration fulfilled whatever obligation it had. But, we must stress that this argument is made only under the assumption that the Department of Administration has undertaken the performance of work so as to make it a contractor under AS 23.30.045 (a). As we have already stated, we are of the opinion that in this case there has been no such undertaking by the Department of Administration.

We realize that in holding that the State of Alaska cannot properly be construed to

case, we are reaching a result that may be harsh in denying relief to the appellant. In Matanuska Electric Ass'n, Inc. v. Johnson, 386 P.2d 698, 702 (Alaska 1963) this court held: "In spite of the human circumstances we do not feel justified in extending the scope of the rule." Here, like in *Matanuska*, we think that a construction of AS 23.30.045 (a) to impose liability upon the State of Alaska would result in an unwarranted extension of the plain meaning of the statute.

The decision of the superior court is affirmed.

RABINOWITZ, Justice (dissenting).

The dominant purpose of Alaska's contractor-under statute is the protection of employees of irresponsible subcontractors. Protection is achieved by the imposition of ultimate responsibility upon the presumably responsible principal contractor, who because of his business experience and economic power, is capable of policing and obtaining compliance with Alaska's Workmen's Compensation Act.

The theory of contractor-under statutes such as AS 23.30.045 (a) is that those who are regularly engaged in the business of taking on jobs for others and farming out portions of their work to third parties have the knowledge and power necessary to require these third parties to obtain workmen's compensation coverage for their employees. Given this priority and purpose, I cannot agree with the majority's conclusion that a contractual obligation, in the common law sense, is the fulcrum upon which the definition of the term "contractor" should turn. I am of the view that "contractor," as used in AS 23.30.045 (a), should be defined in terms of fitness to perform the function envisaged by the legislature, not in terms of the common law meaning of the semantic root of the word "contractor." If emphasis is accorded to functional criteria, then "contractor" should be construed to mean one whose regular occupation is to undertake for others to do jobs by contracting with third be a contractor in the circumstances of this

persons for all or part of the performance.[1] A "contractor" in this sense is likely both to have sufficient experience to understand his subcontractors' duties under the Workmen's Compensation Act, and the economic power easily to police their compliance by requiring them to show that they have procured coverage for their employees.

Under the foregoing definition, the Department of Administration was a contractor, for it undertook to provide flying services for the Department of Fish and Game, as well as other state agencies, by parcelling out the jobs to third parties such as Harvey's Flying Service. The Department of Administration's experience and economic power in this type of activity make it well qualified to perform the policing functions required of a "contractor" under our contractor-under statute.

I do not think that the majority's characterization of the State of Alaska as a single entity is the best technique for determining whether the Department of Administration acted as a "contractor." While this characterization might be persuasive as a philosophical matter in some contexts, the concepts of separateness and unity evoked by it seem unrelated to the purposes meant to be served by the statute we must construe.[2]

Since this case is one of first impression and no precedent decided under the federal Longshoremen's and Harbor Workers' Compensation Act is dispositive of the question raised in the case at bar, I think it unfortunate that "contractor" was not defined functionally. Such an approach would have comported with the overall remedial purposes of Alaska's Workmen's Compensation Act, as well as the more particularized objectives of the contractor-under provisions of AS 23.30.045(a).

In accordance with the foregoing, I would hold the Department of Administration responsible for the payment of death benefits to the estate of Stanley Thorsheim.

---

1. *Compare* Evans v. Tabor City Lumber Co., 232 N.C. 111, 59 S.E.2d 612, 616 (1950).

2. It could be argued that our statutory scheme of state government adopts a theory of the separateness rather than the unity of state departments. AS 37.05.220 describes the Department of Administration as a purchasing "agent" of the state, suggesting that the Department has some separate principal.