Davis Cabs, Inc., et al., Appellees, v. Leach, Admr., Bureau of Unemployment Compensation, Appellant.

(No. 6878—Decided March 20, 1962.)

*Messrs. Day, Cope, Ketterer, Raley & Wright,* for appellees.
Mr. *Mark McElroy,* attorney general, Mr. *A. L. Greenspun* and Mr. *Daniel T. Lehigh,* for appellant.

Rutherford, J. This matter is before this court by appeal under Section 4141.26, Revised Code, from a judgment of the Common Pleas Court of Franklin County.

In the proceeding before the administrator, prior to appeal to the Common Pleas Court, it developed that there were two different classifications of taxicab drivers, *i. e.*, one class where the drivers owned their own cabs and leased the telephone-radio-dispatch service from the cab companies, and the other class where the cabs were owned by the cab companies and both the cabs and the telephone-radio-dispatch service were leased to the drivers. As to the ones owning their cabs and leasing the dispatch service, the administrator found that they were not amenable to the Unemployment Compensation Act; it was only as to the other group, who leased their cabs and the dispatch

service from the appellees herein, that contributions were required, and it was only as to this latter class that reversal of the administrator's decision was sought by appeal to the Common Pleas Court of Franklin County.

The Common Pleas Court reversed the decision of the administrator, finding those who leased both their cabs and the dispatch service also to be independent contractors, not in the employment of the cab companies and not amenable to the provisions of the Ohio Unemployment Compensation Act. From this judgment of the Common Pleas Court, the Administrator of the Bureau of Unemployment Compensation has appealed to this court.

The United States Treasury Department determined, under the rules of common law, that the relationship between the cab companies and the lessees was not that of employer-employee and held for the purpose of federal employment taxes, including income tax withholding from wages, that no liability is incurred by the cab companies with respect to the amounts realized by such individuals from their services. However, findings determined by common-law concepts cannot be determinative of issues herein, which are controlled by definitions as contained in the Ohio Unemployment Compensation Act.

If the relationship of employer-employee does in fact exist, the Davis Cabs, Inc., Independent Cabs, Inc., and Canton Cabs, Inc., owned by John C. and Sarah B. Davis, did have in their employ more than three individuals at one time.

Pertinent statutory provisions are as follows:

Section 4141.01, Revised Code, "Definition."

"* * *

"(A) 'Employer' means any individual or type of organization * * * who * * * had in employment three or more individuals at any one time within a calendar year.

"* * *

"(B) 'Employment' means service performed for wages under any contract of hire * * *.

"(1) 'Employment' includes:

"* * *

"(c) Services performed by an individual for remuneration unless it is shown to the satisfaction of the administrator that such individual has been and will continue to be free from

control or direction over the performance of such services, both under his contract of service and in fact, that such service is outside the usual course of the business for which such service is performed, and that such individual is customarily engaged in an independently established trade, occupation, profession, or business.

"(2) 'Employment' does not include:
"" * * *

"(g) Service performed for one or more principals by an individual who is compensated on a commission basis, who in the performance of the work is master of his own time and efforts, and whose remuneration is wholly dependent on the amount of effort he chooses to expend; * * *
"" * * *

"(G) 'Wages' means remuneration paid to an employee by each of his employers with respect to employment; * * *.

"(H) 'Remuneration' means all compensation for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash. Gratuities customarily received by an individual in the course of his employment from persons other than his employer and which are in addition to wages paid by the employer are not taxable wages. Gratuities customarily received by an individual in the course of his employment from persons other than his employer and which are the employee's sole remuneration for personal services rendered to that employer and which are accounted for by such individual to his employer are treated as wages from his employer."

Section 4141.25, Revised Code, "Contribution rates."

"(A) Each employer shall contribute with respect to wages paid during each calendar year an amount equal to * * * per cent of such wages."

The lease entered into is as follows:
"Lease between ..............................., lessor,
         and ..............................., lessee
"This lease made this .... day of ........, 195.., by and between ..........................., a corporation, lessor, and ..............................., lessee, witnesseth.

"Whereas, lessor is the owner and operator of radio equipment designed for taxicab-telephone-radio-dispatch service in

the city of Canton, Ohio, and the owner of certain taxicabs equipped to conduct said telephone-radio-dispatch service, which taxicabs lessor leases to lessees who are licensed by the city of Canton to operate public taxicabs in the city of Canton; and

"Whereas, lessee has been licensed by the city of Canton to operate a taxicab in the city of Canton; and

"Whereas, lessee desires to lease from lessor one of said taxicabs equipped to conduct said telephone-radio-dispatch service on the following terms and conditions:

"Now, therefore, in consideration of the rental hereinafter provided to be paid, lessor agrees:

"1. That it will maintain a telephone service for the purpose of securing calls from persons desiring transportation, and that it will maintain a radio-dispatch service for the purpose of disseminating this information to the various lessees of its taxicabs equipped to conduct said telephone-radio-dispatch service.

"2. That it will notify the various lessees of its taxicabs equipped to conduct said telephone-radio-dispatch service of calls received from persons desiring transportation upon an impartial basis in rotation or by notifying the lessee of that taxicab which is nearest the location of the call.

"3. That it will lease to lessee one taxicab equipped to conduct said telephone-radio-dispatch service for use as a taxicab for a period of 12 hours.

"4. That it will maintain the radio-dispatch equipment in said taxicab in good operating condition and that it will furnish all oil and grease and maintain said taxicab in good operating condition, except as against abuse or misuse by lessee.

"5. That it hereby agrees to purchase and pay the premium for a policy of liability insurance which meets the minimum requirements of the ordinances of the city of Canton.

"And in consideration of the agreements of lessor, lessee hereby agrees:

"1. That he will operate said radio-dispatch equipment and taxicab in a careful manner and in conformity with all applicable federal and state laws and city ordinances, and that upon failure of lessee to conform to such laws and ordinances, lessor shall have the right to terminate this lease immediately.

"2. That he will pay for all damage to said radio-dispatch equipment and taxicab which is caused by his negligence or willful abuse or misuse.

"3. That he will pay to lessor a daily rental for said taxicab equipped to conduct said telephone-radio-dispatch service of fifty percent (50%) of the fares collected in excess of the cost of gasoline each day from the operation of said taxicab.

"And lessor and lessee further mutually agree:

"1. That the term of this lease is for a period of 12 hours, but this lease shall be automatically renewed for a period of 12 hours per day from day to day under the same terms and conditions as stated herein unless one of the parties to this lease gives notice to the other party that this lease shall not be renewed.

"2. That this lease constitutes the only agreement between lessor and lessee. Lessor reserves no right to direct or control lessee in the operation of said taxicab equipped to conduct said telephone-radio-dispatch service. Lessor is not an employer of lessee. Lessee is not an employee of lessor. The only relationship between lessor and lessee is that of lessor-lessee.

"3. That inasmuch as the relationship between the parties is that of lessor-lessee lessor shall not make any remittances for unemployment insurance and that lessee shall not make any application for benefits under the Unemployment Compensation Act upon the termination of this lease.

"4. That lessee shall keep all the necessary records and file all the appropriate federal income tax returns required of other self-employed persons.

"5. In the event any part of this lease is held invalid, the remaining provisions of this lease shall remain in full force and effect.

"In witness whereof, the parties have set their hands to duplicates hereof the day and year first above written.

"In the presence of:

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                    a corporation

". . . . . . . . . . . . . . . .

    By . . . . . . . . . . . . . . . . . . . . . . ., president
                    lessor

". . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                    lessee                    ''

The lease not only provides that the lessor reserves no

right to direct or control the lessee in the operation of the taxi-
cab equipped to conduct telephone-radio-dispatch service, but
the evidence bears this out as a fact. The lessees have no desig-
nated time to pick up or return the cabs, no designated working
hours, they are free to develop a customer business of their own,
they are not required to accept dispatched calls, they are not
required by the lessor to keep any records, although they are
required by city ordinance to keep a log, and there has never
been any attempt by the lessor to exercise control over them
even when they have used the cab for personal use. If they
wish to leave the streets and go to their homes they are free to
do so. After paying for gasoline, they pay one-half of the bal-
ance of fares to the lessor as consideration for lease of the cab
and the dispatch service, but they receive no funds from the
lessor, their compensation coming direct from third party pas-
sengers.

A question might well arise under the city of Canton ordi-
nances as to whether the lessees should not be licensed as opera-
tors rather than drivers. The relationship between the parties,
however, must be determined not from what the parties choose
to term it in their contract or from the Canton ordinances, but
from the facts as designated in the contract and as they, in fact,
exist, and by application thereto of the definitions as contained
in the Unemployment Compensation statutes. See *Parks Cab
Co.* v. *Annunzio*, 412 Ill., 549, 107 N. E. (2d), 853, paragraphs
two and three of the syllabus. Also, see, *Magruder, Collector
of Internal Revenue*, v. *Yellow Cab Co. of D. C., Inc.*, 141 F. (2d),
324, wherein the Circuit Court of Appeals, Fourth Circuit
(Dobie, J.), said on page 325:

"It may well be that Yellow Cab is legally liable to pas-
sengers injured through the negligence of the drivers. If so
(and we express no opinion on this question) this liability would
be predicated upon the doctrine of estoppel, or a holding out to
the public. It is even possible that there has been here a viola-
tion of order No. 1059, Section 6 of the Public Utilities Commis-
sion of the District of Columbia: 'No public vehicle licensed
under the provisions of paragraph 31 (D) of the Act of July 1,
1932, shall be operated by any person other than the owner of
such vehicle or his duly authorized employee.' But we are told
that no move has ever been made to enforce this provision

against either Yellow Cab or its drivers. In any event, these considerations are in no way determinative of the actual relationship between Yellow Cab and its drivers; for the nature of that relationship stems from the contract between the parties.''

If appellees are amenable to the Workmen's Compensation Act, it is because they pay wages (including remuneration) to employees. In the instant case, however, the only money passing between the lessees and the cab companies is that paid by the lessees to the cab companies as rent for the taxicabs and for the dispatch service. The cab companies pay no money to the lessees for wages or otherwise. Again, see *Magruder, Collector, v. Yellow Cab Co., supra* (141 F. [2d], 324), wherein Judge Dobie, on page 325, said:

''* * * 'Plaintiff (Yellow Cab) paid no money to the drivers for wages or otherwise.' Yellow Cab paid nothing to the drivers, that is conceded. The only money passing between Yellow Cab and the drivers was paid by the drivers to Yellow Cab as rent for the taxicabs. We are asked to hold, though, that the fares received by the drivers from passengers constitute wages paid by Yellow Cab to the drivers. Our imaginations are not quite so lively. * * *''

In the instant case, as in the *Magruder case,* the cab companies had no title or interest in, and no power to make the drivers account for, the money received by the drivers from the passengers. The cab companies were entitled to receive and did receive only the rent paid by the drivers.

Under Section 4141.25, Revised Code, rates assessed are based upon wages paid, but in this instance there are no wages paid by the cab companies. After leasing the cabs and the dispatch service, the lessees operate the business as their own.

Although unable to see how an assessment could be made based upon wages, when none are paid by the cab companies to the lessees, we will also look at the other aspects of the relationship.

Section 4141.01 (2) (g), *supra,* provides that employment does not include service performed for one or more principals by an individual who is compensated on a commission basis. From the contract and the evidence the lessees do not appear to be compensated by the lessors in any manner, but if the lessees were required to turn in all the fares to the cab companies, who

in turn were to return a percentage to the lessees, the most that could be said would be that they were being compensated on a commission basis. Also, the lessees, by the provision of their contracts providing that the "lessor reserves no right to direct or control the lessee" and by the facts as appear from the evidence, are, in the performance of their work, masters of their own time and efforts and their remuneration is wholly dependent on the amount of effort each chooses to expend. These are the conditions under which they are excluded from the status of employment for the purpose of coverage by the Unemployment Compensation Act, by the provisions of Section 4141.01 (2) (g), Revised Code.

The administrator points out that they received dispatch calls, but they were not required to accept them, and in this respect their obligation to the cab companies did not differ from those who leased only the dispatch service and who were not determined, as a result of leasing of the service, to be employees.

From the foregoing it also follows that any right of termination which either the lessor or lessee had was the right of termination of their contractual relation as lessor and lessee, but not of an employer-employee relationship, since such relationship did not exist.

From the evidence it is clear that under the statutory provisions the relationship between the cab companies and the lessees was that of independent contractor rather than of employer-employee, and, also, that the relationship is such that they are excluded from the status of employment under the provisions of Section 4141.01 (2) (g), Revised Code, as hereinbefore noted.

We find no error prejudicial to appellant in the proceeding before the Common Pleas Court. It is our finding that the decision of the administrator was against the manifest weight of the evidence and contrary to law and the judgment of the Common Pleas Court, reversing that decision and rendering final judgment for the Davis Cabs, Inc., Independent Cabs, Inc., Canton Cabs, Inc., John C. Davis and Sarah B. Davis, is affirmed.

*Judgment affirmed.*

McLaughlin, P. J., and Younger, J., concur.

Younger, J., of the Third Appellate District, and McLaughlin and Rutherford, JJ., of the Fifth Appellate District, sitting by designation in the Tenth Appellate District.