**YELLOW CAB CORPORATION, t/a Yellow Cab, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**TAXICAB SERVICE, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. Nos. 433–60 and 434–60.**

United States District Court
D. New Jersey.
June 15, 1962.

Joseph J. Lyman, Washington, D. C., for plaintiffs.

David M. Satz, Jr., Newark, N. J., John M. Hammerman, Washington, D. C., for defendant.

MEANEY, District Judge.

This cause came on for trial on May 29, 1962, before the Court sitting without a jury. The Court having duly considered the evidence and the arguments of counsel, now pursuant to Rule 52, makes and files the following:

### FINDINGS OF FACT

1. The plaintiffs timely filed their Employers' Quarterly Federal Tax Returns (Treasury Form 941) and Federal Unemployment Tax Returns (Treasury Form 940) for the period January 1, 1955 through December 31, 1957 and paid Federal Insurance Contributions taxes and Federal Unemployment taxes

on the earnings of certain taxicab drivers listed therein.

2. The plaintiffs filed timely claims for refund of the taxes paid on the earnings of the taxicab drivers.

3. Notice of disallowance of said claims for refund was mailed to the plaintiffs on February 24, 1960.

4. This suit was timely instituted on May 9, 1960.

5. During the period January 1, 1955 through December 31, 1957:

(a) The plaintiffs were engaged in the taxicab business in Newark, New Jersey.

(b) The plaintiffs owned a fleet of taxicabs.

(c) Each driver, when he was hired, signed a Drivers' Contract.

(d) The Drivers' Contract obligated the driver to obey the rules and regulations published by the plaintiffs.

(e) At the time a driver was hired, the driver was given a copy of the plaintiffs' rules and regulations for taxicab drivers.

(f) The rules and regulations were published by the plaintiffs.

(g) The rules and regulations contained many of the requirements of the ordinances of the City of Newark.

(h) The rules and regulations further contained specific rules and regulations promulgated by the plaintiffs and not contained in the ordinances of the City of Newark.

(i) These specific rules and regulations directed the drivers not only as to the result to be accomplished by their work but also as to the details and means by which the drivers were to accomplish their results.

(j) Among the rules and regulations of the plaintiffs, affecting the drivers, were the following:

(1) ALL REGULAR DRIVERS ARE TO WORK EVERY OTHER SUNDAY.

(2) MAKE ALL CALLS—but— where there is a chance for a pick-up, nearby, call the dispatcher or operator and they will tell you whether to make the call or take the pick-up.

(3) Stop at all call boxes and radio stands—DO NOT go back to the point of pick-up *empty*. This practice of stopping saves mileage.

(4) Call the office for all flat rates on out of town jobs. DO NOT make your own rate, because you will be charged the difference, if your rate is not the same as the office rate. Throw your flag when you go on an out of town job.

(5) DO NOT park in any feed line or on head stand, if you are going to eat.

(6) DO NOT cross the safety aisle in front of the Penn Station to make a left-hand turn.

(7) THE FIRST MAN AT A CALL BOX *MUST* ANSWER THE BELL AND TAKE THE CALL.

(8) DO NOT start your cab while the radio is on—shut off the radio—then start the cab and then turn on the radio.

(9) Keep your radio on at all times— unless instructed by the office to shut it off.

(10) The shift for day drivers:—7:00 A.M.—7:30 A.M. to 3:30 P.M.—4:30 P.M.

The shift for night drivers:—3:30 P.M.—4:30 P.M. to 2:00 A.M.—3:00 A.M. week-ends: 3:00 A.M. to 5:00 A.M.

No driver is to keep his cab out after 5:00 A.M. at any time.

No cab will be held for any driver after 5:00 P.M. or 8:00 A.M.

(k) The plaintiffs maintained call boxes and cab stands.

(*l*) The plaintiffs maintained a garage and the plaintiffs bore the cost of repairs to the taxicabs.

(m) Each taxicab contained a two-way radio, installed by the plaintiffs.

(n) The plaintiffs maintained a central switchboard which received telephone calls requesting taxicabs. The central switchboard would get in touch with the drivers through the driver's two-way radio and the driver would make the pick-up.

5–A Because of the difficulty of securing a full complement of regular drivers, these rules and regulations were not always enforced, though the plaintiffs at all times had the right to enforce them.

6. From January 1, 1955 through March 20, 1956 the plaintiffs had the right to hire and discharge drivers in the discretion of the plaintiffs.

7. From March 20, 1956 (the date of the agreement between the Union and the plaintiffs) through December 31, 1957, the plaintiffs had the right to hire all taxicab drivers. The plaintiffs had the discretionary right to discharge any driver during the first 30 days after the driver was hired. After a driver had worked 30 days the plaintiffs had the right to discharge any driver and were required to give the Union notice of such discharge. If the Union challenged such discharge, the differences were to be processed through a grievance and arbitration procedure.

8. The agreement between the plaintiffs and the Union provided for a one-week paid vacation each year for any driver who had worked 44 weeks.

9. The agreement between the plaintiffs and the Union further provided:

"20.1 The Company shall exercise the functions, duties and responsibilities of management. The conduct of the business and the right to hire and fire and to make all other decisions which are the functions of management shall be exercised by the Company without interference or hindrance by the Union or its members. Particularly, but not by way of limitation, the Company shall have the right to schedule the days of work and the hours of employment of its employees, including work on Sundays and Holidays, the latter to be rotated as equitably as feasible among the employees.

"20.2 The Company shall have the right to promulgate rules and regulations concerning the conduct of its employees and the operation of its business, which rules, when promulgated, shall be posted in a prominent place upon the Company's premises."

10. The plaintiffs had the right to control and direct the drivers, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. The drivers were subject to the will and control of the plaintiffs not only as to what was to be done but how it was to be done.

11. The drivers by agreement received one-half of the meter reading as their compensation, in lieu of a fixed salary.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this action. Title 28 U.S.C. § 1346(a)(1).

2. By virtue of the right of the plaintiffs to control and direct its drivers as to the details and means of accomplishing the work to be done; the right of the plaintiffs to discharge its employees; and the fact that the taxicabs were owned by the plaintiffs, the relationship between the parties was that of employer and employee. See Treas. Reg. § 31.-3121(d)–1(c).

3. The method of compensation did not alter the relationship of employer and employee.

4. The drivers were employees of the plaintiffs within the meaning of Sections 3101 et seq. (FICA) and Sections 3301 et seq. (FUTA) of the Internal Revenue Code of 1954.

5. Plaintiffs are not entitled to refund of the taxes paid on the earnings of the drivers of their taxicabs.

Let an order be entered.