ALFREDO NAZARIO, ETC., ET AL., Plaintiffs and Appellants, v. RAIMUNDO VÉLEZ and/or PUERTO NUEVO TAXICABS ET AL., Defendants and Appellees; PUBLIC SERVICE COMMISSION, Intervener.

No. O-68-195. Decided June 23, 1969.

*Manuel Janer Mendía* and *Mario Morales Reyes* for appellants.
*Rafael A. Rivera Cruz,* Solicitor General, *J. F. Rodríguez Rivera,* Deputy Solicitor General, and *Peter Ortiz,* Acting Deputy Solicitor General, for intervener. *Carmelo Avila Medina, Roberto Avila Rivera, Heriberto Torres Vázquez, Balbino A. Colón Martínez,* and *Rafael Rodríguez Llanos* for appellees.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Ever since 1962, in *Sec. of Labor v. Pedro A. Pizá, Inc.,* 86 P.R.R. 423 (1962), we anticipated that the traditional common-law concept on the main characteristics of an independent contractor should not be applied strictly in the construction of statutes regulating minimum wages and working conditions of an eminently remedial nature. The improvement of working conditions to achieve minimum standards of general welfare of the workers and employees is a social value more fundamental than the mere distinction framed within the strict pattern of the independent contractor, concept which developed in the field of extracontractual responsibility and which originally responded to the need of

stimulating industrial development.[1] Hence, we have consistently rejected restrictive interpretations which lead to exclude from the protection afforded by this legislation. *Campos Encarnación* v. *Sepúlveda*, 94 P.R.R. 72 (1967); *Sec. of Labor* v. *Cementerio Católico Porta Coeli*, 92 P.R.R. 512 (1965); *Sierra Núñez* v. *Const. Equipment Corp.*, 90 P.R.R. 136 (1964).

A restrictive interpretation—mostly due to the unsatisfactory manner in which the facts were stipulated—explains the negative determination of the Superior Court as well as of the District Court, on the right to vacation leave of certain taxi drivers.[2] In their answers, the defendants denied the existence of labor-management relations between the parties and maintained, by way of affirmative defense, that the relation between the parties partakes of the nature of a lease. Let us examine the facts.

---

[1] For an excellent exposition on the development of this concept we refer to the dissenting opinion in *Stover Bedding Co.* v. *Industrial Commission*, 107 P.2d 1027, 1029–1045 (Utah 1940). See also, 39 Yale L.J. 861 (1930).

In Puerto Rico, in the field of extracontractual responsibility, we have incorporated the doctrine of the independent contractor, with its classical ingredient of "control" as a determining factor for its applicability. *Padilla* v. *Municipality of Manatí*, 88 P.R.R. 18, 20 (1963); *Bonet* v. *Municipality of Barceloneta*, 87 P.R.R. 74 (1963); *Mariani* v. *Christy*, 73 P.R.R. 729 (1952).

In areas of labor law we have had the opportunity of considering its application: in compensation for labor accidents, *Bustelo* v. *Industrial Commission*, 85 P.R.R. 559, 567 (1962); *Atiles, Mgr.* v. *Industrial Commission*, 68 P.R.R. 107 (1948); *Atiles, Mgr.* v. *Industrial Commission*, 63 P.R.R. 573, 577 (1944); *Tomás* v. *Industrial Commission*, 59 P.R.R. 852, 857 (1942); *Montaner, Mgr.* v. *Industrial Commission*, 59 P.R.R. 284, 287 *et seq.* (1941); *Romero* v. *Industrial Commission*, 57 P.R.R. 343 (1940); *Montaner, Mgr.* v. *Industrial Commission*, 57 P.R.R. 263, 267 (1940); in labor-management relations, *L.R.B.* v. *Manhattan Taxi Cabs Corp.*, 92 P.R.R. 422 (1965); *Landrón* v. *L.R.B.*, 87 P.R.R. 87 (1963); in claim for vacation pay, *Sec. of Labor* v. *Pedro A. Pizá, Inc.*, 86 P.R.R. 423 (1962).

[2] The claim relies on the provisions of Art. V B of Mandatory Decree No. 12, applicable to the transportation industry, 29 R.&R.P.R. § 245n–195, under the authority of § 40(b) of the Minimum Wage Act, 29 L.P.R.A. § 246k.

The defendants are grantees of a franchise granted by the Public Service Commission to operate several taxicabs. By a verbal agreement, and after the authorization by said entity they granted the operation of one of the units to plaintiff, who paid a fixed amount daily to defendant, which amount was greater on Fridays, Saturdays, and Sundays. The taxicab operators did not receive any direct payment from defendant. The expenses for gasoline were paid by the driver; the repairs were charged to the enterprise. These are the stipulated facts.

The action of the Public Service Commission which affects the relationship existing between the parties is also pertinent. It is included in its decisions of February 5, 1957 and May 20, 1958. In the former, after indicating that the question as to the propriety of the "lease" of the vehicles by the grantees to their drivers in the light of the Public Service Act has been raised, it is decided that such a system is convenient for the public service subject to the supervision by the Commission of the grantees and the "lessees", and conditions are prescribed for that purpose.[3] In the latter, with the participation

---

[3] The conditions pertinent to the question discussed are the following:

"1. The grantees and lessees shall file a lease contract stating the term of duration of said contract and the conditions thereof, it being understood that the conditions which are to be established by this DECISION, shall be incorporated in every contract. For the purposes of the licenses of the vehicles and for anything else that the Commission may require the presence of the vehicle, the grantees shall be held directly bound to comply with said DECISION.

"2. . . . . . . .

"3. . . . . . . .

"4. The companies to which franchises have been granted shall continue to be directly liable before this Commission for the compliance with the orders and acts affecting them and the regulations for this kind of service approved by the Public Service Commission.

"5. The manner of operating such vehicles *shall be identical or the same as if such lease would not exist,* this is, the same relations which existed when the lessees acted as employees of the grantees shall exist between the lessees and the grantees. The lessees and the grantees shall be bound to render the service in such a manner as would prevent the disorganization thereof, the unfair competition practices, excess speed, and

of the Legal Division of the Department of Labor, the foregoing decision is ratified and "[the] position is reaffirmed . . . in the sense that it shall not be by any manner understood, of creating in the taxicab operator a particular employer, but that labor-management relations exist between the owner of the taxicab . . . to comply with all labor laws and with laws concerning labor-management relations."[4]

 It is advisable to indicate previously that the characterization or connotation made by the parties respecting the nature of their relations is not determinative, *Landrón* v. *Labor Relations Board*, 87 P.R.R. 87, 93 (1963). Considering the scarce elements of proof offered in the instant case we

---

noncompliance with the Traffic Laws and Regulations of Puerto Rico. Every contract shall be approved by the Commission before it becomes effective.

"6. Every insurance policy which covers each one of these vehicles shall contain an endorsement by virtue of which the insurance company agrees to cover the risks to which it is bound under the insurance contract, even though the vehicle is being operated by a lessee thereof.

"7. In case of accident no matter how slight it might be, the grantees as well as the lessees shall be under the obligation to notify it immediately to the Commission, so that, after the corresponding investigation is performed, the lessees' or the grantees' liability for the accident which occurred may be determined.

"8. The grantees shall be under the obligation to inform the Commission at all times as to their lessees and their vehicles as well as of any violation to the orders, rules and laws which govern the operation of the taxicabs.

"9. The lessees shall be bound, for the sake of the public service, to park their vehicles at the home offices of the grantees with a view to respond to the users' calls as it was done when they were the companies' employees.

"10. No person shall be a lessee of the vehicle unless he is a driver with a taxicab operator's license in force at the time of the lease, and no lease shall be granted for a term longer than the time required for the expiration of the lessee's taxicab operator's license.

."11. No lease contract shall be executed, annulled, or rescinded without the consent of the Public Service Commission."

[4] In order to implement this provision of the decision, taxicab companies were required to: (a) submit the corresponding reports as to compliance with labor laws; (b) submit evidence with respect to the payment of unemployment insurance and date of payment; (c) endorse the public liability policies to cover the operation of the vehicles by the "lessees".

do not believe that it can be said that, in effect, lessor-lessee relationship exists between the parties, but rather that an atypical contract is involved, which escapes a definite classification. The insistency of both litigants in referring to "lease" of taxicabs perhaps impressed the trial courts too much.

■ In *Landrón* v. *L.R.B.*, *supra* at p. 93, we pointed out a series of factors which have been considered to determine whether in similar relations an independent contractor or an employee is involved: (a) the degree of control in the performance of the work, (b) manner of remuneration, (c) the power to hire and the right to discharge, (d) opportunity for profit and risk taken, (e) ownership of equipment and dependence on the facilities furnished by the principal, (f) tax withholding. The pronouncements in one sense or the other are abundant, nearly always on the margin of a determination on the obligation of tax withholding. See, annotations, *Taxicab driver as employee of owner of cab, or independent contractor, within social security and unemployment insurance statutes*, 10 A.L.R.2d 369, and *What amounts to . . . lessor-lessee relationship, as distinguished from employment or service relation, within social security or unemployment compensation acts*, 164 A.L.R. 1411, 1419 and 152 A.L.R. 520, 522. Since it happens so frequently there is no absolute rule and it all depends on the importance attributed to each one of the factors. Thus, it has been held that the relationship is that of employer-employee in *United States* v. *Fleming*, 293 F.2d 953 (5th Cir. 1961); *Jones* v. *Goodson*, 121 F.2d 176 (10th Cir. 1941); *Yellow Cab Corporation* v. *United States*, 210 F.Supp. 64 (1962); *Michigan Cab Co.* v. *Kavanagh*, 82 F.Supp. 486 (1941); *Hannigan* v. *Goldfarb*, 147 A.2d 56 (N.J. 1958); *Lassen* v. *Stamford Transit Co.*, 128 Atl. 117 (Conn. 1925); *Gladstone Cab Company* v. *Donnelly*, 197 N.E.2d 3 (Ill. 1964); *Young* v. *Indiana Employment Security Board*, 187 N.E.2d 489 (Ind. 1963); *Kaus* v. *Unemployment Compensation Commission*, 299 N.W. 415 (Iowa

1941); *Read* v. *Warkentin*, 341 P.2d 980 (Kan. 1959); *Salt Lake Transportation Co.* v. *Board of Review*, 296 P.2d 983 (Utah 1956); *Appeal of Farwest Taxi Service*, 114 P.2d 164 (Wash. 1941); *Meridian Taxi Cab Co.* v. *Ward*, 186 So. 636 (Miss. 1939); *Radley* v. *Commonwealth*, 181 S.W.2d 417 (Ky. 1944). The opposite sense was held in *Economy Cab Co. of Jacksonville* v. *Fahs*, 174 F.2d 321 (5th Cir. 1949), *cert. den.*, 338 U.S. 818; *New Deal Cab Co.* v. *Fahs*, 174 F.2d 318 (5th Cir. 1949), *cert. den.*, 338 U.S. 818; *Party Cab Co.* v. *United States of America*, 172 F.2d 87 (7th Cir. 1949), *cert. den.*, 338 U.S. 818; *Woods* v. *Nicholas*, 163 F.2d 615 (10th Cir. 1947); *United States* v. *Davis*, 154 F.2d 314 (D.C. Cir. 1946); *Magruder* v. *Yellow Cab Co. of D.C.*, 141 F.2d 324 (4th Cir. 1944); *Co-op Cab Co.* v. *Allen*, 82 F.Supp. 695 (1947); *Yellow Cab Co.* v. *Magruder*, 49 F.Supp. 605 (1943); *Davis Cabs, Inc.* v. *Leach*, 184 N.E.2d 444 (Ohio 1962); *Parks Cab Co.* v. *Annunzio*, 107 N.E.2d 853 (Ill. 1952).

We need not examine these factors in the instant case. The governing view for the situation we are considering should be detached from facts which may change depending upon the cleverness of the parties in formulating the conditions of the juridical relation and rather framed within the determination of the position of the one in relation to the other with special stress on the degree of economical dependence. Primordial attention should be paid to the economic realities rather than to technical classifications which might prevail in other areas of the law, but which do not lead to a fair solution when remedial legislation is involved. It cannot be denied that the taxicab operator is in a subordinate manifest position before the grantee on whom he almost exclusively depends for the performance of his work, since the enterprise is the holder of the franchise. It is emphasized when it is considered that by administrative provision the authorizations to operate taxicabs have been frozen. The operator is therefore necessarily subject to the requirements and conditions

which the grantee may impose provided they are not in conflict with the decisions of the Public Service Commission. The very manner of compensation which requires that the initial product of the work be delivered to the grantee as a rent shows the position of invalidity of the operator. The contract per day agreed upon places the operator in the hands of the entrepreneur, who may terminate it in the shortest conceivable period of time. The fact that the operators are included as workers for the purposes of another legislation likewise remedial in nature, as the unemployment insurance, is also important. Summing up, it is a question of a group which deserves and requires the protection represented by the vacation leave prescribed by the decree for the health and efficiency of the persons involved.

The judgment rendered by the Superior Court, San Juan Part, on June 24, 1968, will be reversed and the case remanded for further proceedings.